ALLEN *v.* OVERTURF.

5-2580                                                      353 S. W. 2d 343

Opinion delivered February 5, 1962.

*M. D. Anglin,* for appellant.

*J. E. Simpson,* for appellee.

NEILL BOHLINGER, Associate Justice. The appellants, husband and wife, were moving from the State of California and in passing through Carroll County they were attracted by the appearance of the countryside and decided to buy a small farm and settle there. To this end they contacted the appellee whose advertisement as real

estate agent had attracted their attention and the appellee showed to the appellants a small farm of approximately 48 acres belonging to Leslie A. Hough and Ellen M. Hough.

The appellants and appellee went over the farm and at that time the appellants advised the appellee that they wished to do some farming and stock raising and wanted a place to rest. Appellee advised the appellants that the Hough property was suitable in all respects.

One of the appellants, Laura E. Allen, testified that she had been in the real estate business as a broker in California and inquired of the appellee as to the water supply and was told there was a well and three springs on the place that never went dry, that there was plenty of water. The appellants appear to have looked at the well and springs and found water in them. The appellants decided at that time to buy the place and with the appellee they drove to Green Forest at once and there executed an escrow contract with Leslie and Ellen Hough for the purchase of the farm for the price of $5,600.00, paying $2,000.00 in cash and agreed to pay the balance at the rate of $250.00 each month. This transaction took place on the 16th of July, 1958, and the appellants paid four monthly installments. On January 5, 1959 appellants paid the balance due on the purchase price.

Some four or five weeks after closing the transaction and moving on the farm, appellants discovered that there was a lack of water and upon investigation found that the well and springs were wet-weather springs and well,—that is, they were dependent on the rainfall and surface water for their supply. Appellants testified that by reason of that state of facts they have spent certain sums of money to obtain water on the place.

Appellants have brought this suit alleging that appellee, a real estate broker, made fraudulent representations as to the available water supply on the land which he showed to appellants and which they bought relying on those representations. The fact that the well and

springs were wet weather springs and well was something that appellants could not determine in this viewing of the property. Whether or not appellee was acting on behalf of the seller or on behalf of seller and buyer is disputed but since this is a suit for fraud and is a suit against the broker, the relationship is immaterial.

The escrow contract covering the purchase of this land contains this provision:

"Purchasers herein agree and state that they have personally viewed and inspected the above described property and hereby release and relieve Elmer and Fay Overturf of and from any responsibility regarding said sale and property, except as herein noted."

There were no exceptions noted. At the close of appellants' testimony and on motion of appellee the court directed a verdict for the appellee on the grounds that the escrow agreement contained a release in favor of appellee and that the appellants had waived any rights by paying off the balance of the purchase price and waiting a long period of time before bringing this action. In both of these particulars we find the court in error.

The courts have many times held that such purported releases as the one contained in the escrow agreement in this case do not relieve the broker from liability for fraud and have based their holdings either on the ground that a contract obtained by fraud cannot be used to relieve the party obtaining the contract of liability for that fraud, or on the ground that the broker is not a party to the contract and cannot take advantage of it to relieve him of his fraud. In *Goldsten* v. *Burke*, 43 A. 2d 712 (Mun. Ct. of App., D of C) a broker had assured the buyer that the property was served by a public sewage system whereas in fact a septic tank was used and the contract of sale contained the language:

"* * * that this contract contains the final and entire agreement between the parties hereto, and that they shall not be bound by any terms, conditions, state-

ments, warranties or representations, oral or written, not herein contained.''

The court in that case, in answer to the contention that the contract relieved the broker of liability for the misrepresentation, stated:

''The answer to this is that, 'where a party is fraudulently induced to enter into a contract, the fraud cannot be atoned by reducing the contract to writing. *Smith* v. *O'Connor,* 66 App. D. C. 367, 369, 88 F. 2d 749, 751.''

In *Stevenson* v. *Barwineck,* 8 Wis. 2d 557, 99 N. W. 2d 690, the court held that an exculpatory clause in a contract between buyer and seller could have no effect on the broker's liability in tort for a misrepresentation because the broker was not a party to the contract.

And in *Crawford* v. *Nastos,* 182 Cal. App. 2d 659, 6 Cal. Rptr. 425, the court reasoned thusly:

''Finally, the present contention is devoid of merit since an exculpatory provision, such as the one in question, is given sanction under proper circumstances to relieve an honest *vendor* from liability for damages arising from the fraudulent representations of his negotiating Agent (*Herzog* v. *Capital Co.,* 27 Cal. 2d 349, 353, 164 P. 2d 8) and not the vendor's *agent* who, as the trial court here found, has misrepresented material facts during the course of his dealings with the vendee.''

In Anno. 174 ALR 1010, § 10, it is stated:

''And the reason why a clause 'that no verbal agreement affecting the validity of his contract will be recognized' cannot prevent a purchaser from rescinding a contract because of his vendor's fraudulent misrepresentation was stated in *Scarsdale Pub. Co.* v. *Carter* (1909) 63 Misc. 271, 116 NYS 731, as follows: 'Fraud cannot be an agreement, It is an imposture practiced by one upon another. It may be used as an inducement to enter into an agreement.

Defendant does not claim that he entered into an agreement that affects the validity of the contract, but

·that he was induced by false representations to enter into the contract. If that be true the validity of the ·contract is not assailed, but its very existence is de-:stroyed. To constitute fraud by false representation there must be a representation of alleged existing fact; ·that representation must be false in fact; it must be made with intent to deceive, and the person to whom it is made must believe it.'

Similarly, it was held in *Carty* v. *McMenamin,* (1923) 108 Or. 489, 216 P. 228, that a vendor would not be permitted to invoke, in an action brought against him for misrepresenting the quality of grazing land, a clause in the contract of purchase to the effect that the vendor made no representations as to the value or grazing quality of a range, the court saying: 'If a party is guilty of fraud in making a contract, he cannot exculpate himself from the consequences of his own wrong by a provision in writing that his fraudulent oral representations shall not be used as evidence against him in a case in which fraud and deceit is the gist of the cause.' ''

The testimony of Laura E. Allen, one of the appellants, is sufficient to raise a jury question as to whether or not there was fraud on the part of the appellee which caused the appellants to enter into the contract. The testimony as to the damages is also sufficient to raise a jury question on that point.

The trial court's second reason for directing the verdict does not obtain in this case. In a case where a buyer is suing a seller-principal for the fraud of his broker-agent there may be some duty of the buyer to notify the principal of such fraud and of the fact that the buyer chooses to affirm the contract and sue for damages for the fraud, and the buyer may thereby be guilty of laches or estoppel for not so doing. This is not such a case. The statute of limitations has not run on the cause of action and the appellants have filed a timely suit. The fraud, if there be such, was known to the broker at the time he perpetrated it, and there is no reason for

him to be apprised that a suit is going to be brought against him until such suit is actually brought.

This is an action for damages based on alleged fraudulent representations and the only limitation as to the time of bringing the suit is the statute of limitations. The suit is brought well within that time. In *Fort Smith Lumber Co.* v. *Baker,* 123 Ark. 275, 185 S. W. 277, this court considered the question of fraud, the remedies available, and the time for bringing the suit. The facts in that case are those stated in the opinion.

"After the plaintiff arrived in Arkansas he went on the land and attempted to cultivate it for two years. In other words he waited two years after he had seen the land before he brought this suit. He had the right to bring his action at any time within the period of time allowed by law but his measure of damages was fixed when he first discovered the fraud which he says had been perpetrated upon him. According to his own testimony, as soon as he went upon the land he ascertained that there was no public road going to it and no stream of water on it. He also saw that about one-half of the land was too steep to ever be cultivated and that the remaining one-half had no soil on it."

We further stated in that opinion:

"A party who has been induced to enter into a contract for the purchase of property by the false representations of the vendor concerning the quantity or quality of the property sold, may have either of these remedies which he conceives is most to his interest to adopt. 'He may annul the contract, and by returning or offering to return the property purchased within a reasonable time entitle himself to recover whatever he had paid upon the contract, or, he may elect to retain the property and sue for the damages he has sustained by reason of the false and fraudulent representations, * * *,'".

In this case the appellants elected to retain the property and sue the broker. It does not appear from the record that the appellants had any contract or assurances from Leslie A. and Ellen M. Hough who were the vendors. If there were false representations that induced the appellants to accept the contract, they would appear to have been made by the appellee and the suit is properly directed against him.

For the reasons herein stated this cause is reversed and remanded for further proceedings not inconsistent with this opinion.