# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-4046

_____

Richard M. Stufflebeam,

    Plaintiff - Appellant,

v.

Jeff W. Harris,

    Defendant - Appellee.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
Western District of Arkansas.

_____

Submitted: October 19, 2007
Filed: April 4, 2008

_____

Before LOKEN, Chief Judge, GRUENDER and BENTON, Circuit Judges.

_____

LOKEN, Chief Judge.

Near the end of a routine traffic stop in May 2003, Arkansas State Police Officer Jeff W. Harris asked the vehicle's passenger, Richard M. Stufflebeam, to identify himself. When Stufflebeam repeatedly refused, he was arrested for knowingly obstructing, impairing, or hindering "the performance of any governmental function." Ark. Code Ann. § 5-54-102(a)(1). After the criminal charge was nolle prossed, Stufflebeam filed this § 1983 action against Harris in his individual capacity. Stufflebeam claims he was arrested without probable cause in violation of his Fourth Amendment rights. The district court granted Harris's Rule 12(b)(6) motion to dismiss. Stufflebeam appeals. We reverse.

We review *de novo* the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting the facts alleged in the complaint as true and granting all reasonable inferences in favor of Stufflebeam, the nonmoving party. Gilmore v. County of Douglas, Neb., 406 F.3d 935, 937 (8th Cir. 2005). Stufflebeam's complaint alleged few facts, but the parties agree that additional facts are part of the Rule 12 record because Stufflebeam attached Officer Harris's Incident/Activity Report and the subsequent criminal citation to his complaint.

It is undisputed that Harris stopped the car being driven by Stufflebeam's grandson because it did not display a license plate. After the grandson produced his driver's license, proof of insurance, a bill of sale, and a title document,[1] Harris asked the passenger, Stufflebeam, for his identification. Stufflebeam angrily replied, "You can't do that!" Harris replied that the law permitted him to ask for identification. Stufflebeam again refused, stating, "You either arrest me and take me to jail or I don't have to show you anything!" Harris returned to his vehicle and requested back-up. When two additional officers arrived, Harris asked Stufflebeam to exit the vehicle. He complied but still refused to identify himself "with anger in his voice and expression," according to Harris's report. Harris then arrested and handcuffed Stufflebeam and removed everything from his pockets, including a wallet containing a driver's license that identified Stufflebeam. Harris placed Stufflebeam in the back of the squad car, searched the vehicle "incident to the arrest" over the grandson's protest, and then released the grandson and drove Stufflebeam to a local jail where he was booked for obstructing governmental operations.

---

[1]Arkansas law requires the display of a valid license plate. See Ark. Code Ann. §§ 27-14-304, -1005. But after producing the documents requested by Harris, Stufflebeam's grandson was not cited for a violation, no doubt because the purchaser of a vehicle may operate it without a license plate for 30 days so long as the title or notarized bill of sale is carried in the vehicle. See §§ 27-14-304, 701(c), 903(a)(2). In any event, Stufflebeam concedes that Officer Harris had probable cause to stop the vehicle. See Travis v. State, 959 S.W.2d 32, 34-35 (Ark. 1998).

A warrantless arrest without probable cause violates the Fourth Amendment as applied to state actors by the Fourteenth Amendment. Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005). A state police officer has probable cause to arrest if the facts and circumstances within his knowledge "are sufficient to warrant a prudent person, or one of reasonable caution, in believing . . . that the suspect has committed, is committing, or is about to commit an offense" under state law. United States v. Brown, 49 F.3d 1346, 1349 (8th Cir. 1995) (quotation omitted).

Stufflebeam was charged with violating § 5-54-102(a)(1), which prohibits the knowing obstruction of Harris's performance of a "governmental function," which in turn is defined as "any activity that a public servant is legally authorized to undertake on behalf of any governmental unit he or she serves." Ark. Code Ann. § 5-54-101(6). Stufflebeam's complaint alleges that he "was not suspected of any criminal activity" and was arrested "simply because he would not identify himself." Nothing in the record suggests any obstruction other than Stufflebeam's refusal to identify himself. Thus, the primary question, one not addressed by the district court or carefully analyzed by the parties on appeal, is whether Arkansas law permits a police officer to arrest a person for refusing to identify himself when he is not suspected of other criminal activity and his identification is not needed to protect officer safety or to resolve whatever reasonable suspicions prompted the officer to initiate an on-going traffic stop or Terry[2] stop. See Marrs v. Tuckey, 362 F. Supp. 2d 927, 939-46 (E.D. Mich. 2005). We conclude it does not.

To establish the governmental function that is a necessary predicate for this arrest, Harris relies exclusively on Rule 2.2 of the Arkansas Rules of Criminal Procedure. This Rule provides in relevant part:

---

[2]See Terry v. Ohio, 392 U.S. 1 (1968).

**Rule 2.2 Authority to request cooperation.**

(a) A law enforcement officer may request any person to furnish information or otherwise cooperate in the investigation or prevention of crime. The officer may request the person to respond to questions . . . or to comply with any other reasonable request.

(b) In making a request pursuant to this rule, no law enforcement officer shall indicate that a person is legally obligated to furnish information or to otherwise cooperate if no such legal obligation exists.

By threatening to arrest Stufflebeam if he refused to identify himself, Harris "indicated" to Stufflebeam in no uncertain terms that he was legally obligated to furnish this information. Yet Harris cites no provision of Arkansas law that created a "legal obligation" to cooperate in this manner within the meaning of Rule 2.2(b).[3] As Stufflebeam had no legal obligation to provide the information, his refusal to comply with Harris's improper demand did not obstruct a *legitimate* "governmental function" within the meaning of § 5-54-102(a)(1). In other words, on these facts, the authority conferred by Rule 2.2 did not provide Harris with probable cause to arrest Stufflebeam for a violation of § 5-54-102(a)(1).

Our interpretation of Rule 2.2 is strongly reinforced by a Supreme Court of Arkansas decision not cited by either party or by the district court. In Meadows v. State, 602 S.W.2d 636 (Ark. 1980), narcotics investigators stopped two men for

---

[3] In a case decided after the arrest in this case, the Supreme Court held that a state law "requiring a suspect to disclose his name in the course of a valid Terry stop," and authorizing his arrest for refusal to comply, "did not contravene the guarantees of the Fourth Amendment." Hiibel v. Sixth Jud. Dist. Ct., 542 U.S. 177, 188-89 (2004). The Arkansas criminal statutes and rules contain two provisions that fall within this "stop and identify" category. See Ark. R. Crim. P. 3.1; Ark. Code Ann. § 5-71-213(b)(2). However, Harris does not rely on these provisions, nor could he on this record.

suspiciously hurrying through the Little Rock airport. The officers asked for identification, Meadows produced his driver's license, and a computer check of the license revealed an outstanding arrest warrant. Meadows was then arrested pursuant to the warrant, and heroin was found during a search incident to the arrest. Reversing the trial court, the Supreme Court of Arkansas suppressed the heroin. After rejecting the State's argument there was reasonable suspicion for the stop under Rule 3.1, the Court turned to the State's alternative argument that the request for identification was proper under Rule 2.2. After quoting Rule 2.2(a), the Court rejected this contention:

> We have emphasized the word "otherwise" [in the quote] because the insertion of that word shows beyond question that the officer's request for information must be in aid of the investigation or prevention of crime. Here there is nothing in the officers' testimony to support a belief that Officer Sanders asked Meadows for identification in the course of a criminal investigation.

602 S.W.2d at 638. In a decision issued eighteen months after the arrest in this case, the Arkansas Court reaffirmed its interpretation of Rule 2.2 in Meadows. See Jackson v. State, 197 S.W.3d 468, 483 (Ark. 2004), cert. denied, 544 U.S. 1039 (2005). Here, Harris called for back-up and extended the traffic stop in order to demand that a passenger not suspected of criminal activity identify himself. Rule 2.2 as construed in Meadows did not support this additional detention nor the arrest. Accordingly, Harris lacked probable cause to arrest Stufflebeam for obstruction of a governmental function or any other crime under Arkansas law.

Harris relies heavily on cases establishing that a police officer does not violate the Fourth Amendment by inquiring into the identity of a vehicle's passenger during the course of a lawful traffic stop, even absent reasonable suspicion that the passenger has committed a crime. United States v. Slater, 411 F.3d 1003, 1005-06 (8th Cir. 2005); see Muehler v. Mena, 544 U.S. 93, 100-02 (2005). These cases are not controlling, because the issue here is whether the subsequent arrest, not the initial request, violated the Fourth Amendment. Although we decide the probable cause

issue by applying the relevant Arkansas criminal statutes and rules as construed by the Supreme Court of Arkansas, it is significant that our conclusion is consistent with the Supreme Court's recent categorical statement that "an officer may not arrest a suspect for failure to identify himself if the request for identification is not reasonably related to the circumstances justifying the stop." Hiibel v. Sixth Jud. Dist. Ct., 542 U.S. 177, 188 (2004), distinguishing Brown v. Texas, 443 U.S. 47, 52-53 (1979).

Harris also urges us to affirm the dismissal on the alternative ground of qualified immunity, an issue the district court did not address. Qualified immunity protects public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quotations omitted). Here, Harris acted contrary to the plain meaning of Rule 2.2(b) and the law of Arkansas as clearly established in Meadows by prolonging the detention and then arresting Stufflebeam, a passenger not suspected of criminal activity, because he adamantly refused to comply with an unlawful *demand* that he identify himself. Like the local police officers in Walker, 414 F.3d at 993, Harris invoked § 5-54-102(a)(1) in circumstances in which no reasonable police officer could believe he had probable cause to arrest this stubborn and irritating, but law abiding citizen. On this record, Officer Harris is not entitled to dismissal of Stufflebeam's claim, either on the merits or based on qualified immunity.

The judgment of the district court is reversed.

_____