2010 Ark. 27

Dewayne **PROVENCE**, Carline Provence, Charley Transportation, Inc., Charley Leasing, LLC, Camel Logistics, Inc., Charley Logistics, Inc., Appellants,

v.

**NATIONAL CARRIERS, INC., Appellee.**

No. 09–636.

Supreme Court of Arkansas.

Jan. 21, 2010.

Lisle Law Firm, P.A., by: Chris Lisle, Springdale, for appellants.

Scopelitis, Garvin, Light, Hanson & Feary, P.C., by: Eric K. Habig and Everett & Wales, by: John C. Everett, Fayetteville, for appellee.

ROBERT L. BROWN, Associate Justice.

Appellants (Dewayne Provence; Carline Provence; Charley Transportation, Inc.; Charley Leasing, LLC; Camel Logistics, Inc.; and Charley Logistics, Inc.) raise one issue in this appeal: whether venue is proper in Arkansas in light of forum-selection clauses in certain contracts with appellee National Carriers, Inc., which designate that the law of the state of Kansas will govern. We agree with the circuit court that the forum-selection clauses are enforceable, and we affirm the dismissal of appellants' complaint without prejudice.

On November 18, 2008, the appellants filed a complaint against National Carriers

in Washington County Circuit Court. The complaint alleged that National Carriers, a large irregular route carrier that carries freight for any shipper in America and services forty-eight states, had "fraudulently induced them to enter into an agreement ostensibly to purchase the Plaintiffs' trucking business but in reality to steal the Plaintiff's [sic] local trucking business accounts." Appellants claimed that venue was proper pursuant to Arkansas Code Annotated sections 16–55–213 and 16–60–113.

The facts, as set out in the complaint, are these. Dewayne Provence, and his wife, Carline, owned a variety of trucking companies, and, as of February 2007, they owned and operated sixty trucks, and 114 trailers. They also leased additional trucks. The Provences had many customers in northwest Arkansas, but the majority of their business was with Wal–Mart and Tyson Foods. In 2006, the Provences began discussions with National Carriers to purchase their business. In January 2008, National Carriers agreed to purchase the business for one million dollars. The purchase "was to occur in phases, beginning with Provence working as a broker for [National Carrier]'s local and wholly owned subsidiary agent, NET [National Elite Transportation, LLC]." According to the Provences, an unsigned document titled "Dewayne Provance [sic] office proposal," included promises and assurances that along with other oral promises and assurances, induced the Provences to sell their business to National Carriers.

On February 7, 2008, the Provences entered into a "Broker Agent Agreement" with National Elite Transportation (NET), which was created to conduct National Carriers's business in northwest Arkansas. According to the Broker Agent Agreement, the Provences would remain independent brokers and would be compensated on all loads brokered for National Carriers or NET. According to the complaint, Dewayne Provence entered into the Broker Agent Agreement "[b]elieving that [National Carriers] was going to purchase his business for one million dollars."

The Broker Agent Agreement was attached as an exhibit to the complaint, and it included the following language:

9. *General Provisions:* The parties hereto agree that this Agreement and the duties and responsibilities created hereby:

. . . .

b) Constitutes the entire agreement between the parties and supersedes all other agreements, whether written or oral, and whether prior hereto or contemporaneous herewith.

. . . .

d) Will be interpreted and governed by the laws of the State of Kansas without regard to the conflict of laws provision of any state. *The exclusive forums for any suit, action or proceeding arising from or growing out of, or relating to this Agreement will be instituted in Federal court in the State of Kansas or in State court in Seward County, State of Kansas. BROKER AGENT hereby waives any objection in may not have or hereafter acquire to laying of venue and irrevocably submits to jurisdiction and waives any claim or inconvenient forum.* BROKER AGENT further consents to service by mail or delivery by hand. Nothing herein shall limit NET from proceeding against BROKER AGENT to enforce the terms of this Agreement in any other jurisdiction or to serve the process in any manner permitted by law.

(Emphasis added.)

The Provences and National Carriers also executed a "Tractor Lease Agree-

ment" and a "Trailer Lease Agreement," which were also exhibits to the complaint. The Tractor Lease Agreement provided that the Provences would lease certain tractors to National Carriers for one year in exchange for $1,900 per tractor per month, and the Trailer Lease Agreement provided that the Provences would lease to National Carriers certain trailers for one year in exchange for $800 per trailer per month. The agreements purported to "constitute[ ] the entire agreement between and among the parties," and each included the following paragraph:

16. *Governing Law and Venue.* This Agreement shall be governed by and construed in accordance with the laws of the State of Kansas, without regard to the conflicts of laws principles thereof. *Any legal action or proceeding with respect to this Agreement shall be brought in the courts of the State of Kansas and, by execution and delivery of this Agreement, each party hereby irrevocably accepts for itself and in respect of this property, generally and unconditionally, the jurisdiction of the aforesaid courts.* Each party hereby further irrevocably waives any claim that any such courts lack jurisdiction over such party, and agrees not to plead or claim in any legal action or proceeding with respect to this Agreement brought in any of the aforesaid courts, that any such court lacks jurisdiction over such party.

(Emphasis added.) The appellants prayed for a judgment against National Carriers in an amount to be determined by a jury, for pre- and post-judgment interest, and for punitive damages.

On January 23, 2009, National Carriers moved to dismiss appellants' complaint for improper venue. National Carriers maintained that venue was improper under Arkansas Rule of Civil Procedure 12(b)(3) because resolution of any dispute was governed by forum-selection clauses in the various contracts, which required that any legal dispute be brought in Kansas courts. National Carriers maintained that the circuit judge should apply Kansas law and find that the forum-selection clauses were valid, thereby making venue improper in Arkansas. The appellants responded and claimed that the motion to dismiss should be denied for two reasons: (1) there was no forum-selection provision between the appellants and National Carriers, the named defendant in the lawsuit, and the forum-selection clause in the Broker Agent Agreement between the appellants and NET was irrelevant because NET was not a party to the suit; and (2) forum-selection clauses are vitiated in agreements where fraud or fraudulent inducement in entering into those agreements is alleged.

National Carriers replied to the appellants' response and asserted that it was irrelevant whether NET was a party to the lawsuit because the appellants' "vaguely articulated claims each arise out of interactions between Provence and [National Carriers], which culminated in the Tractor Lease Agreement and Trailer Lease Agreement ... each containing a nearly identical forum-selection clause as the Broker Agent Agreement." According to National Carriers, any claim of fraud made by the appellants was insufficient to overcome the forum-selection clauses because the complaint did not allege that the appellants were fraudulently induced to execute the specific forum-selection provisions.

At a hearing on March 9, 2009, the circuit judge heard the motion to dismiss, and the parties reiterated the arguments made in their previously filed pleadings. During the hearing, the circuit judge stated that in his view, the appellants had pled that National Carriers was liable for the

actions of NET, and he rejected the claim that the forum-selection clause in the Broker Agent Agreement did not apply because NET was not a party to this lawsuit. The judge also opined that the forum-selection clauses controlled, despite the appellants' general claim of fraudulent inducement to enter into the various agreements.[1] On March 17, 2009, the judge dismissed the complaint without prejudice. The judge found that "venue of this matter is improper in that the choice of forums provisions in the contracts between the parties compel litigation to be in the state of Kansas." It is from this order of dismissal that the appellants appeal.

In reviewing a circuit judge's decision on a motion to dismiss for improper venue under Arkansas Rule of Civil Procedure 12(b)(3), this court treats the facts alleged in the complaint as true and views them in the light most favorable to the plaintiff. *See, e.g., Servewell Plumbing v. Summit Contractors,* 362 Ark. 598, 603, 210 S.W.3d 101, 105 (2005). In testing the sufficiency of the complaint on a motion to dismiss, all reasonable inferences must be resolved in favor of the complaint, and the pleadings are to be liberally construed. *Id.,* 210 S.W.3d at 105–06.

As a preliminary matter, we must decide whether we need to consider if the law of Arkansas or the law of the foreign state (Kansas) is to be applied in determining the validity and enforceability of the forum-selection clauses. The agreements, of course, state that the law of Kansas will be used to interpret their terms. National Carriers argued before the circuit judge that this court's case of *Servewell Plumb-*

*ing v. Summit Contractors* requires courts to apply the procedural rules of Arkansas to the motion to dismiss and the substantive law of the foreign state in deciding whether to enforce a forum-selection clause. 362 Ark. 598, 210 S.W.3d 101.

The circuit judge's dismissal order did not answer specifically whether he applied Arkansas or Kansas law to determine the validity of the forum-selection clauses.[2] However, National Carriers argued to the circuit judge that Kansas law should apply and that general allegations of fraud were insufficient to vitiate the clauses at issue under either Arkansas or Kansas law. The appellants did not specifically argue which law the circuit judge should apply but merely stated that they were not bound by the forum-selection clauses because there was fraud in the inducement of the contracts.

On appeal, the appellants do not raise the question of which state's substantive law should apply in deciding the viability of these clauses. National Carriers, on the other hand, again urges that dismissal was appropriate under the laws of both Arkansas and Kansas. Because the appellants do not raise the choice-of-law point on appeal, we will look to the law of both Arkansas and Kansas to determine whether the trial court correctly concluded that specific allegations of fraud were needed to invalidate the forum-selection clauses.

The crux of this case is whether the appellants' general allegation that fraud induced the contracts operates to invalidate an otherwise-valid forum-selection

---

1. According to Judge Smith, "[U]nder Arkansas law ... you just can't get around these forum-selection clauses by calling your complaint something else and say, well, you know, I know we agreed we're going to go to Kansas to settle out disputes in court, but I'm going to get around that, I'm going to call this

fraud instead of breach of contract and I think we can get around it."

2. In his comments from the bench, the judge indicated that he thought the forum-selection clauses were enforceable in both states.

provision or whether the complaint must allege fraud in the inducement of the specific forum-selection clauses. This narrow issue is a question of first impression in this state, despite both parties' contentions to the contrary. To reiterate, National Carriers argues that specific fraud directed at the |₈forum-selection clauses was required to vitiate those clauses. The appellants argue, on the other hand, that it is well settled that the forum-selection clauses were inoperable because the complaint alleged general fraud in the inducement of the agreements.

While this court has not directly addressed the question of the validity of forum-selection clauses where fraud is generally pled as inducing the agreements, we have clearly held that choice-of-forum clauses in contracts are binding, unless it can be shown that the enforcement of the clause would be unreasonable and unfair. *See Servewell Plumbing*, 362 Ark. at 603, 210 S.W.3d at 106 (citing *RMP Rentals v. Metroplex, Inc.*, 356 Ark. 76, 146 S.W.3d 861 (2004)). This court in *Servewell* also noted that it is the modern trend among courts to respect the enforceability of contracts limiting judicial jurisdiction if there is nothing unfair and unreasonable about them. *Id.*, *see also The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9–13, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (enforcing a forum-selection clause even though they "have historically not been favored by American Courts"). The *Servewell* court aligned itself with this trend and went on to state that an individual who subjects himself to the personal jurisdiction of a court by express agreement shall be bound by that contract, if the agreement can be determined to be fair and reasonable. *Id.*, *see also Nelms v. Morgan Portable Bldg. Corp.*, 305 Ark. 284, 808 S.W.2d 314 (1991).

In addition to this court's stated policy of enforcing forum-selection clauses unless they are unfair or unreasonable, there is persuasive authority from other jurisdictions to affirm the circuit court's dismissal in the instant case due to the absence of fraud directed specifically to |₉the forum-selection clauses. *See Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) ("[A]n arbitration or forum-selection clause in a contract is not enforceable if the *inclusion of that clause in the contract* was the product of fraud or coercion.") (emphasis in original); *Marano v. Z–Teca Restaurants*, 254 F.3d 753, 757 (8th Cir.2001) (general allegation of fraudulent inducement insufficient to raise an issue that the forum-selection clauses within the agreements may be unenforceable because of fraud); *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir.1997) (fraud and overreaching must be specific to a forum-selection clause in order to invalidate it).

Furthermore, this court has recently made it clear in an analogous situation that, in deciding the viability of arbitration clauses, it is improper for a court to consider that issue on the basis that a contract containing an arbitration clause is invalid as a whole when there is not also a claim that the arbitration clause itself is specifically invalid. *See, e.g., Advance Am. Servicing of Ark. v. McGinnis*, 375 Ark. 24, 35, 289 S.W.3d 37, 45 (2008) (interpreting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006)). The United State Supreme Court also said in *Scherk v. Alberto–Culver Co.*, 417 U.S. at 519, 94 S.Ct. 2449, that an agreement to arbitrate "is, in effect, a specialized kind of forum-selection clause." The Court has further held that federal courts may only adjudicate whether there was fraud in the inducement of the arbitration clause itself. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

■ Given the weight of this authority, we hold that in Arkansas a party like the appellants in the instant case must plead fraud in the inducement of the forum-selection clause itself to avoid its application. Generalized allegations of fraud with respect to the inducement of the contract as a whole, as the appellants have made in the instant case, will not operate to invalidate a forum-selection clause.[3] Appellants' argument that a general allegation of fraud vis á vis the entire contract suffices to invalidate a forum-selection clause therefore must fail, and we affirm the circuit judge on this point. We note, in addition, that even if the circuit judge had ruled that Kansas law governs this issue, Kansas caselaw suggests a similar conclusion. *See Vanier v. Ponsoldt*, 251 Kan. 88, 833 P.2d 949 (1992) (forum-selection clause upheld; court notes that the appellant did not claim that the forum-selection clause was entered into due to fraud or over-reaching).

Appellants further contend that the circuit judge erred in giving National Carriers the benefit of the forum-selection clause in the Broker Agent Agreement because it was not a party to that contract. Despite this contention, language in the appellants' brief supports the circuit judge's rejection of this argument. For example, appellants' complaint and brief make it clear that the appellants hold National Carriers responsible for NET's action: "[National Carriers] used the broker agreement between NET and Provence to drive Provence out of business;" "[National Carriers], acting via NET, tried to cause Provence financial distress;" and "The fraudulent representations from [National Carriers] were contained in a fax. . . .

The three subsequent agreements which were the product of those fraudulent representations are attached to the complaint. . . ." The appellants cannot make these arguments on one hand and then turn around and attempt to avoid the application of the forum-selection provisions by arguing that NET is not a party to the lawsuit. We hold that the appellants' contention in this regard is without merit.

As a final issue, appellants argue that "[t]here is a fundamental problem dismissing an entire cause of action for fraud in the inducement of a contract against [National Carriers] based on forum selection clauses in the two separate lease agreements [because] the lease agreements are not the entire agreements of the parties." We do not consider this argument because it is not preserved for our review. The record shows that the appellants did not make this argument to the circuit judge; nor did they receive a ruling on the question. It is well settled that we will not review an issue where the circuit judge did not have an opportunity to rule on it. *See, e.g., Johnson v. The Cincinnati Ins. Co.*, 375 Ark. 164, 289 S.W.3d 407 (2008).

Affirmed.

SHEFFIELD, J., not participating.

---

**3.** Appellants do cite cases holding that any allegation of fraud should invalidate the entire agreement, including the forum-selection clause. However, those cases are unpublished, federal district court cases. *See 11500,* *LLC v. Cummings*, No. 08–6–61, 2008 WL 4681371 (W.D.Mo. Oct. 22, 2008) and *Root v. GERS, Inc.*, No. 8:01CV326, 2002 WL 809539 (D.Neb. Apr. 3, 2002).