# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1605

_____

William Blankenship, Jr.,                    *
                                             *
            Appellant,                       *
                                             *    Appeal from the United States
    v.                                       *    District Court for the
                                             *    Western District of Arkansas.
USA Truck, Inc.,                             *
                                             *
            Appellee.                        *

_____

Submitted: December 15, 2009
Filed: April 15, 2010

_____

Before RILEY,[1] Chief Judge, WOLLMAN and MELLOY, Circuit Judges.

_____

RILEY, Chief Judge.

William Blankenship, Jr. (Blankenship) alleges USA Truck, Inc. (USA Truck) owes him more than $1 million in unpaid sales commissions. Blankenship admits he agreed, in 2006, to settle his dispute with USA Truck over the commissions for $85,000. Blankenship brought this lawsuit to void the parties' settlement agreement and to obtain punitive damages for fraud. Blankenship alleges USA Truck deceived him about the amount of commissions owed and thereby fraudulently induced him to sign the settlement agreement. The district court dismissed Blankenship's lawsuit

_____

[1]The Honorable William Jay Riley became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2010.

because the settlement agreement contained a no-reliance clause in which Blankenship affirmatively stated he had not relied upon any "statement or representation by [USA Truck] concerning the nature and extent of any . . . commissions." We reverse.

## I. BACKGROUND

### A. Standard of Review

"We review 'de novo the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim.'" Crooks v. Lynch, 557 F.3d 846, 848 (8th Cir. 2009) (quoting Stufflebeam v. Harris, 521 F.3d 884, 886 (8th Cir. 2008)). We accept the allegations in Blankenship's complaint as true and afford Blankenship all reasonable inferences from those allegations. Id. We also consider the four exhibits Blankenship attached to his complaint. See Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

### B. Blankenship's Allegations

#### 1. Parties

Blankenship is a salesman and a resident of Texas. USA Truck is a trucking firm. USA Truck is an Arkansas corporation with its principal place of business in Crawford County, Arkansas.

#### 2. Agent Agreement

In June 2001, Blankenship and USA Truck entered into an Agent Agreement. The Agent Agreement granted Blankenship exclusive responsibility for a portfolio of protected customer accounts (protected customers). The protected customers included Tuesday Morning Company (Tuesday Morning) and International Truck Company a/k/a SST Truck (SST).

USA Truck agreed to pay Blankenship a 5% commission on all revenue derived from the protected customers. USA Truck retained the right to terminate the Agent Agreement with ninety days notice. In the event of termination, USA Truck promised

to refrain from hauling loads of freight for the protected customers for eighteen months after the ninety days passed. If USA Truck failed to refrain from hauling loads of freight for the protected customers during this eighteen-month cease period, USA Truck agreed to pay Blankenship "$200.00 for every load hauled . . . until another 18 month cease period has passed."

Blankenship worked for USA Truck under the terms of the Agent Agreement for approximately two years. On July 1, 2003, USA Truck notified Blankenship it wished to terminate the Agent Agreement on October 1, 2003. On October 1, 2003, USA Truck terminated the Agent Agreement.

### 3. Settlement Agreement

In 2006, USA Truck's Director of Sales, Pat Campbell (Campbell), informed Blankenship that USA Truck had violated the Agent Agreement. Campbell admitted USA Truck had hauled loads of freight for Tuesday Morning since October 1, 2003. When Blankenship asked Campbell how many loads USA Truck hauled for SST, Campbell falsely "represented . . . [USA Truck] had been hauling an average of two loads a week." USA Truck's president and general counsel later ratified Campbell's false representations. USA Truck misled Blankenship to induce Blankenship into accepting a relatively low settlement offer.

Based upon Campbell's representations about the number of loads USA Truck had hauled for the protected customers, including but not limited to SST, Blankenship agreed to release USA Truck from liability for breaching the Agent Agreement in exchange for $85,000. On March 6, 2006, Blankenship and USA Truck executed the Release and Settlement Agreement (Settlement Agreement). The Settlement Agreement contained the following no-reliance clause:

> It is understood and agreed that this is a settlement and compromise of doubtful and disputed claims . . . [and] that no statement or

representation by or on behalf of any person, entity or party hereby released, or their agents or representatives, concerning the nature and extent of any losses, commissions or damages, or legal liability therefore, has been made or considered by the undersigned in executing this [Settlement Agreement].

. . . .

**THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES HERETO AND THE TERMS OF THIS RELEASE ARE CONTRACTUAL AND NOT A MERE RECITAL.**

Several months later, "an independent source" told Blankenship the truth: USA Truck "had been hauling ten to fifteen loads a day [for SST], instead of the two loads a week as represented by [Campbell]." Blankenship alleges he would not have settled with USA Truck for only $85,000 if he had known of Campbell's false representations. Blankenship estimates USA Truck's deceit cost Blankenship over $1 million.

### C. Prior Proceedings
#### 1. Complaint

In July 2008, Blankenship invoked the district court's diversity jurisdiction, 28 U.S.C. § 1332(a)(1), and filed a three-count[2] complaint against USA Truck under the Arkansas common law. Count I alleges breach of contract. Blankenship asserts USA Truck breached the Agent Agreement when USA Truck hauled loads of freight for protected customers, after October 1, 2003, without paying Blankenship $200 per load. Count II alleges fraud. Blankenship maintains Campbell's false representations about the number of loads USA Truck hauled induced Blankenship to execute the Settlement Agreement. Blankenship concludes the Settlement Agreement "is void and invalid and should be [set] aside in that it is a product of intentional false, misleading

---

[2]We ignore Count III, which is a request for punitive damages

-4-

[and] fraudulent information disseminated by [USA Truck] to [Blankenship] designed to deceive [Blankenship]."

## 2. Motion to Dismiss

In August 2008, USA Truck moved to dismiss Blankenship's complaint, pursuant to Fed. R. Civ. P. 12(b)(6). USA Truck argued the plain and unambiguous terms of the Settlement Agreement barred the complaint under the doctrines of release, accord and satisfaction, and waiver. USA Truck characterized Blankenship's lawsuit as an impermissible post hoc attempt to undo an unfavorable settlement.

USA Truck conceded the Arkansas Supreme Court's jurisprudence regarding the effect of a no-reliance clause was "not well developed" but suggested "courts all over America have recognized" a no-reliance clause "neutralize[s]" a plaintiff's attempt to use allegations of fraud to void a settlement agreement. USA Truck asked the district court to follow the lead of those other courts and hold, as a matter of law, that Blankenship was unable to prove the justifiable reliance element of his fraud claim. USA Truck contended a reasonable jury could not find Blankenship justifiably relied on Campbell's false statements, because Blankenship admitted in the Settlement Agreement that he did not rely on anything USA Truck's agents had said when he decided to settle.

Blankenship resisted USA Truck's motion to dismiss. Blankenship reiterated the allegations in his complaint and argued the Settlement Agreement was unenforceable because USA Truck "fraudulently induced" Blankenship to enter into the Settlement Agreement. Blankenship pointed out that, under Arkansas law, fraud voids a contract ab initio—because fraud in the inducement precludes mutual assent—and affords the defrauded party the right to reject the contract.

Blankenship agreed a "slew" of cases from other jurisdictions lent support to USA Truck's argument that a no-reliance clause barred a subsequent fraudulent

-5-

inducement claim. Blankenship maintained, however, that the Arkansas Supreme Court's steadfast refusal to enforce contracts procured through fraud foreclosed USA Truck's reliance upon those other cases. Blankenship asked the court to allow a jury to decide whether he justifiably relied on Campbell's false representations when deciding whether to execute the Settlement Agreement.

### 3.    Order, Judgment, and Appeal

In March 2009, the district court granted USA Truck's motion and dismissed Blankenship's complaint with prejudice. The court focused on the merits of Blankenship's fraud claim, because Blankenship's breach-of-contract claim depended entirely upon the validity of the Settlement Agreement.

After reciting the five elements of Blankenship's fraud claim, see, e.g., DePriest v. AstraZeneca Pharms., L.P., No. 08-1257, ___ S.W.3d ___, ___, 2009 WL 3681868, *___ (Ark. Nov. 5, 2009), the district court held as a matter of law that Blankenship could not prove the fourth element, justifiable reliance. At the outset of its analysis, the court observed Blankenship "face[d] a difficult proposition" because his complaint contradicted the terms of the no-reliance clause in the Settlement Agreement. The district court recognized fraud generally voids a contract, but opined Blankenship "misse[d] the important point that, without proof of justifiable reliance, there is no actionable fraud."

The district court appeared to accept USA Truck's representation "that there is no case law in Arkansas directly on point on this issue." Without making any prediction as to how the Arkansas Supreme Court might rule, the district court found the cases USA Truck cited from other jurisdictions to be "persuasive" and granted USA Truck's motion to dismiss. Blankenship appealed.

## II. DISCUSSION

### A. Arguments

On appeal, the parties focus their arguments on a single question: whether, under Arkansas law, the no-reliance clause in the Settlement Agreement bars Blankenship's fraud claim. In other words, the disputed issue is whether the no-reliance clause precludes a reasonable jury from finding Blankenship justifiably relied upon Campbell's false representation about the quantity of freight USA Truck had hauled before Blankenship executed the Settlement Agreement. The Settlement Agreement's no-reliance clause is a complete defense to Blankenship's claims unless Blankenship can show the Settlement Agreement is voidable because the agreement was induced by fraud. See, e.g., Milberg, Weiss, Bershad, Hynes & Lerach, L.L.P. v. State, 28 S.W.3d 842, 853 (Ark. 2000) (explaining the interrelation between a fraudulent inducement claim and the validity of a consent decree).

Blankenship complains the district court ignored governing precedent from the Arkansas Supreme Court when holding the no-reliance clause barred his fraud claim. See, e.g., Hiatt v. Mazda Motor Corp., 75 F.3d 1252, 1255 (8th Cir. 1996) ("It is . . . well-settled that in a suit based on diversity of citizenship jurisdiction the federal courts apply . . . the substantive law of the relevant state.") (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). In all other respects the parties' arguments largely reflect the arguments they presented to the district court.

### B. Arkansas Law

We agree with the parties, Arkansas law controls. See Erie, 304 U.S. at 78. "Erie mandates that a federal court sitting in diversity apply the substantive law of the forum State, absent a federal statutory or constitutional directive to the contrary." Salve Regina Coll. v. Russell, 499 U.S. 225, 226 (1991) (citing Erie, 304 U.S. at 78, and 28 U.S.C. § 1652). Arkansas is the forum state, and there are no contrary federal statutory or constitutional directives here.

Under <u>Erie</u>, we are obligated to apply governing precedent from the Arkansas Supreme Court. <u>See</u>, <u>e.g.</u>, <u>Robinson v. MFA Mut. Ins. Co.</u>, 629 F.2d 497, 500-02 (8th Cir. 1980) (adhering to an Arkansas Supreme Court case). "'When there is no state supreme court case directly on point, our role is to predict how the state supreme court would rule if faced with the [same issue] before us.'" <u>Northland Cas. Co. v. Meeks</u>, 540 F.3d 869, 874 (8th Cir. 2008) (quoting <u>Cotton v. Commodore Express</u>, <u>Inc.</u>, 459 F.3d 862, 864 (8th Cir. 2006)). In other words, we must make an "<u>Erie</u>-educated guess" when the law of the forum state is not crystal clear. We owe no deference to a district court's determination of, or predictions about, state law. <u>See</u> <u>Salve Regina</u>, 499 U.S. at 231 (abrogating <u>Norton v. St. Paul Fire & Marine Ins. Co.</u>, 902 F.2d 1355, 1357 (8th Cir. 1990)).

We find no Arkansas Supreme Court cases directly on point.[3] Four cases, however, suggest the Arkansas Supreme Court would hold that the no-reliance clause in the Settlement Agreement does ***not*** bar Blankenship's fraud claim.

### 1. **Northwestern Rug v. Leftwich**

The first case is <u>Northwestern Rug Mfg. Co. v. Leftwich Hardware & Furniture Co.</u>, 2 S.W.2d 1109 (Ark. 1928). In <u>Northwestern Rug</u>, a hardware store agreed in a written contract to purchase rugs and pillow tops from a rug manufacturer. <u>Id.</u> at 1110. After the hardware store cancelled the order, the rug manufacturer sued the hardware store for breach of contract. <u>Id.</u>

---

[3]USA Truck advises us of a recent Arkansas Supreme Court case, <u>Provence v. Nat'l Carriers, Inc.</u>, No. 09-636, ___ S.W.3d ___, 2010 WL 199246 (Ark. Jan. 21, 2010), conceding "<u>Provence</u> is not precisely on point." We agree. Blankenship alleges USA Truck's fraud induced him into executing the Settlement Agreement itself, which makes the entire Settlement Agreement unenforceable. <u>Cf.</u> <u>Provence</u>, ___ S.W.3d at ___, 2010 WL 199246, at *___ (holding a generalized allegation of fraud in the inducement is not sufficient to invalidate a forum-selection clause).

The trial court permitted the hardware store to mount a fraudulent inducement defense to the rug manufacturer's breach-of-contract claim. Id. Specifically, the trial court (1) permitted the hardware store to present evidence the rug manufacturer's salesman made false statements to induce the hardware store to buy the rugs and pillow tops, and (2) instructed the jury that, if it found the salesman's false statements induced the hardware store to buy the rugs and pillow tops, the parties' contract was void. Id. The trial court permitted the hardware store to mount its fraudulent inducement defense even though the parties' contract contained the following no-reliance clause: "Any special terms or agreements with the salesman will not be binding unless specified above." Id.

At trial, the hardware store's witnesses testified (1) the rug manufacturer's salesman promised the hardware store "if it would purchase the goods and execute the order, [the hardware store] would become the exclusive agent in Magazine, Ark[ansas], for the sale of [the rug manufacturer's] goods"; (2) the rug manufacturer's salesman represented to the hardware store that "he had not sold any other merchant in Magazine any of said goods, and that he would not do so"; (3) in truth, the rug manufacturer had already sold the same goods to other merchants in Magazine; and (4) the hardware store would not have ordered the goods had the salesman told the truth. Id. The jury returned a verdict in favor of the hardware store. Id.

Notwithstanding the no-reliance clause in the parties' contract, the Arkansas Supreme Court affirmed the trial court. The Arkansas Supreme Court reasoned:

> The defense relied on did not vary the terms of the written contract, but, on the contrary, if true, made voidable the whole contract. It related to the matter of inducement to enter into the written contract, and constitutes a good defense to the action.
>
> . . . .

-9-

There was therefore no error in the admission of the evidence or the giving of the instructions in this case.

Id. (citations omitted).


### 2.    Allen v. Overturf (Allen I)

The second case is Allen v. Overturf, 353 S.W.2d 343 (Ark. 1962) (Allen I). In Allen I, a married couple from California purchased a farm in Arkansas. Id. at 343. Before signing the real estate contract, the sellers' broker falsely represented to the couple "there was a well and three springs on the place that never went dry, that there was plenty of water." Id. at 344.

When the couple discovered the farm lacked a steady supply of water, they sued the broker for fraud notwithstanding the following clause in their escrow agreement:

> Purchasers herein agree and state that they have personally viewed and inspected the above described property and hereby release [the broker] from any responsibility regarding said sale and property, except as herein noted.

Id. No exceptions were noted. Id. The trial court directed a verdict for the broker in part "on the grounds that the escrow agreement contained a release in favor of [the broker]." Id.

The Arkansas Supreme Court reversed. Id. In relevant part, the Arkansas Supreme Court observed:

> [T]he courts have many times held that such purported releases as the one contained in the escrow agreement in this case do not relieve the broker from liability for fraud and have based their holdings [alternatively] . . . on the ground that a contract obtained by fraud cannot

-10-

be used to relieve the party obtaining the contract of liability for that fraud . . . .

. . . .

"If a party is guilty of fraud in making a contract, he cannot exculpate himself from the consequences of his own wrong by a provision in writing that his fraudulent oral representations shall not be used as evidence against him in a case in which fraud and deceit is the gist of the cause."

Id. at 344, 345 (quoting Carty v. McMenamin, 216 P. 228, 231 (Or. 1923) (en banc) (holding a plaintiff stated a claim for fraud upon which relief could be granted notwithstanding a specific no-reliance clause)).

### 3. Ultracuts v. Wal-Mart

The third case is Ultracuts Ltd. v. Wal-Mart Stores, Inc., 33 S.W.3d 128 (Ark. 2000). In Ultracuts, a chain of hair salons entered into negotiations with Wal-Mart to place its salons in Western Canada Wal-Mart stores. Id. at 131. While negotiating with Wal-Mart, the hair salon chain's president learned one of its competitors was also negotiating with Wal-Mart to place its own salons in Wal-Mart stores. Id. The hair salon chain's president met with Wal-Mart's executives, who assured the hair salon chain's president that Wal-Mart would not, among other things, place any competitor's salons in Wal-Mart stores in Western Canada without offering the hair salon chain a right of first refusal. Id. In reliance upon the executives' assurances, the hair salon chain executed a licensing agreement with Wal-Mart. Id. The licensing agreement did not, however, provide a right of first refusal for the hair salon chain. Id. at 132. To the contrary, the licensing agreement contained the following clause:

This Agreement constitutes the entire agreement between the parties regarding this Licensee's use of the Licensed Premises. It is understood and agreed that there are no agreements . . . representations, oral or written, . . . other than those contained herein, and that all prior

-11-

conversations, understandings, agreements, statements, communications or agreements, oral or written, with respect to this Agreement are hereby superseded.

Id.

The hair salon chain sued Wal-Mart for breach of contract and fraud. Id. at 130. Wal-Mart moved for summary judgment. Id. The trial court granted the motion in part because the above-quoted clause precluded a finding of justifiable reliance as a matter of law. Id. at 133.

The Arkansas Supreme Court reversed. Id. at 135-36. Without much elaboration, the court held "fact questions are presented that preclude summary judgment as to the fraud claim." Id. at 136. The court remanded for a jury trial on the issue of justifiable reliance. Id.

### 4. Wal-Mart v. Coughlin

The fourth and final case is Wal-Mart Stores, Inc. v. Coughlin, 255 S.W.3d 424 (Ark. 2007). In Coughlin, a senior executive entered into a retirement agreement with his employer, Wal-Mart. Id. at 426. The agreement contained a clause that "bar[red] any 'known or unknown' claim" Wal-Mart had against the executive. Id. at 427. After executing the agreement, Wal-Mart discovered the executive had stolen hundreds of thousands of dollars from Wal-Mart. Id. at 426. Wal-Mart sued the executive for fraud and sought rescission of the retirement agreement. Id. The trial court dismissed Wal-Mart's fraud claim for failure to state a claim upon which relief could be granted. Id. at 427.

On appeal, the executive argued the retirement agreement's "known or unknown claim" clause barred the fraud claim and justified the trial court's order of dismissal. Id. Among other things, the executive argued Arkansas "strongly supports

freedom of contract between two sophisticated parties and that the general principles of contract law must apply." Id.

The Arkansas Supreme Court reversed. Id. at 431-35. Citing Allen I, the Arkansas Supreme Court reiterated "that releases contained in contracts do not relieve a party of liability for fraud if that party obtained the contract by fraud." Id. at 432 (citing Allen I, 353 S.W.2d at 344-45). The court then quoted the following passage from Allen I at length:

> "Fraud cannot be an agreement. It is an imposture practiced by one upon another. It may be used as an inducement to enter into an agreement. Defendant does not claim that he entered into an agreement that affects the validity of the contract, but that he was induced by false representations to enter into the contract. If that be true the validity of the contract is not assailed, but its very existence is destroyed. To constitute fraud by false representation there must be a representation of alleged existing fact; that representation must be false in fact; it must be made with intent to deceive, and the person to whom it is made must believe it."

Id. (quoting Allen I, 353 S.W.2d at 345). The Arkansas Supreme Court concluded the issue of justifiable reliance was a "critical issue[] . . . for the jury to decide" notwithstanding the "known or unknown claim" clause in the retirement agreement. Id. at 434. The court held, "Arkansas law is clear that a release induced by fraud is invalid." Id. at 435.

### C. Analysis

Taken together, the foregoing four cases suggest the Arkansas Supreme Court would hold the no-reliance clause in the Settlement Agreement is not an absolute bar to Blankenship's fraud claim. There are few material differences between the facts of the foregoing cases and the case at hand. A leading treatise agrees with our conclusion. See Corbin on Contracts § 578 & n.45 (Interim ed. 2002) (including

-13-

Arkansas among those jurisdictions in which a party may "not keep the benefits of a contract induced by his agent's fraud without being held responsible therefor, even though there is an express provision in the writing declaring that there have been no representations that are not contained therein") (citing Nw. Rug, 2 S.W.2d at 1109).

USA Truck attempts to distinguish Allen I, Ultracuts, and Coughlin (but not Northwestern Rug) on the facts of each case. USA Truck's arguments are unpersuasive and miss the larger theme running through the Arkansas Supreme Court's cases. For example, USA Truck argues Allen I is distinguishable partly because it arises in the context of the sale of real estate, yet the Arkansas Supreme Court recently quoted and cited Allen I with approval in Coughlin, an employment case. See Coughlin, 255 S.W.3d at 432. And while it is true the Arkansas Supreme Court favors settlement, see, e.g., Douglas v. Adams Trucking Co., 46 S.W.3d 512, 517 (Ark. 2001), values freedom of contract, see, e.g., McMillan v. Palmer, 131 S.W.2d 943, 946 (Ark. 1939), and presumes parties have read their contracts, see, e.g., Dodson v. Abercrombie, 208 S.W.2d 433, 435 (Ark. 1948), it is equally true the Arkansas Supreme Court abhors fraud, see, e.g., Coughlin, 255 S.W.3d at 432.

USA Truck complains reversal will severely jeopardize the finality of settlement agreements throughout this circuit, implicitly encouraging the unhappy and the greedy to prevaricate in order to take a proverbial second bite at the settlement apple. See, e.g., Rissman v. Rissman, 213 F.3d 381, 384 (7th Cir. 2000) (upholding a no-reliance clause under the federal securities laws, because such a clause "ensures that both the transaction and any subsequent litigation proceed on the basis of the parties' writings, which are less subject to the vagaries of memory and the risks of fabrication"). While there may be good public policy reasons to enforce no-reliance clauses, see, e.g., MBIA Ins. Co. v. Royal Indem. Co., 426 F.3d 204, 214-19 (3d Cir. 2005) (Alito, J.) (predicting the Delaware Supreme Court would enforce a no-reliance clause between sophisticated parties, "likely indulg[ing] the assumption that they said what they meant and meant what they said"), we need not express any view as to the

wisdom of our holding. Our sole task under <u>Erie</u> is to ascertain and apply Arkansas law. The district court ran afoul of <u>Erie</u> when, instead of grappling with Arkansas Supreme Court precedent, the district court relied on "persuasive" cases from other jurisdictions. <u>Cf. Erie</u>, 304 U.S. at 78.

Based upon governing Arkansas Supreme Court precedent, we predict the Arkansas Supreme Court would determine Blankenship stated claims upon which relief may be granted.[4] We must, therefore, reverse. <u>See Erie</u>, 304 U.S. at 78.

## III.  CONCLUSION

We reverse and remand for further proceedings not inconsistent with this opinion.

_____

_____

[4]We will continue to enforce no-reliance clauses as appropriate under the applicable governing state law. <u>Compare</u> <u>First Fin. Fed. Sav. & Loan Ass'n v. E.F. Hutton Mortgage Corp.</u>, 834 F.2d 685, 686-88 (8th Cir. 1987) (applying New York law and enforcing a no-reliance clause), <u>with</u> <u>Nw. Bank & Trust Co. v. First Ill. Nat'l Bank</u>, 354 F.3d 721, 725-26 (8th Cir. 2003) (applying Iowa law and declining to enforce a no-reliance clause). Of course, a jury may yet find Blankenship's acquiescence to the no-reliance clause in the Settlement Agreement betrays a lack of justifiable reliance on his part. <u>See</u> <u>Allen v. Overturf</u>, 366 S.W.2d 189, 190 (Ark. 1963) (indicating the jury rejected the couple's fraud claim after reversal in <u>Allen I</u>).