ADVANCE AMERICA SERVICING of ARKANSAS, INC., d/b/a Advance America Cash Advance; Advance America, Cash Advance Centers of Arkansas, Inc.; and Advance America, Cash Advance Centers, Inc. *v.* Brenda McGINNIS, Individually and on Behalf of a Class of Similarly Situated Persons

08-492                                                    289 S.W.3d 37

Supreme Court of Arkansas
Opinion delivered November 6, 2008

[Rehearing denied December 11, 2008.]

*Wright, Lindsey & Jennings*, by: *Claire Shows Hancock* and *Gary D. Marts, Jr.*; *Sutherland Asbill & Brennan*, by: *Lewis S. Wiener, Phillip E. Stano*, and *Brendan Ballard*, for appellants.

*Arnold, Batson Turner & Turner*, by: *Todd Turner* and *Dan Turner*; *Scholtens & Averitt*, by: *Chris Averitt* and *Jay Scholtens*, for appellee.

DONALD L. CORBIN, Justice. Appellants, Advance America Servicing of Arkansas, Inc., d/b/a Advance America Cash Advance; Advance America, Cash Advance Centers of Arkansas, Inc.; and Advance America, Cash Advance Centers, Inc., appeal from the order of the Clark County Circuit Court denying their motion to compel arbitration of a putative class-action complaint for alleged violations of Arkansas's Constitution and laws prohibiting usurious interest and deceptive trade practices. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(a)(1) as an appeal involving the interpretation or construction of the Arkansas Constitution. On appeal, Appellants argue the circuit court erred in concluding the arbitration provision in question was invalid for lack of mutuality, in looking outside the arbitration provision to other parts of the under-lying contract, and in failing to strike the invalid portion of the contract and to enforce the arbitration provision. We find no error and affirm the circuit court's denial of the motion to compel arbitration.

Appellee, Brenda McGinnis, filed a putative class-action complaint against Appellants in circuit court on February 27, 2007, alleging Appellants had charged her and other potential class members usurious interest, engaged in deceptive trade practices, and violated a prior court-approved settlement agreement. According to the complaint, Appellee engaged in a transaction with Appellants at their Jonesboro, Arkansas, branch office on Novem-

ber 3, 2006, whereby she wrote a check for $278.83 and Appellants gave her $250.00 in cash and agreed to hold her check until her next payday. The complaint alleged this transaction was typical of the transactions between Appellants and its customers in Arkansas and amounted to a loan resulting in an effective annual percentage rate of over 150% in violation of the prohibition of usurious interest contained in article 19, section 13 of the Arkansas Constitution. As such, the complaint alleged entitlement to twice the amount of interest paid plus costs and attorney's fees. *See* Ark. Const. art. 19, § 13; Ark. Code Ann. §§ 4-57-101 et seq. (Repl. 2001 & Supp. 2005). In addition to being a usurious loan, the complaint also alleged this transaction was a violation of the Arkansas Deceptive Trade Practices Act, Arkansas Code Annotated sections 4-88-101 et seq. (Repl. 2001 & Supp. 2003), entitling Appellee to her actual damages plus costs and attorney's fees. The complaint alleged further that the transaction demonstrated that Appellants were operating under the Check-Cashers Act, Arkansas Code Annotated sections 23-52-101 et seq. (Repl. 2000 & Supp. 2005), and charging fees under that act in violation of a settlement agreement to cease conducting check-cashing transactions in Arkansas approved by the circuit court in *Garrett v. Advance America, Cash Centers of Arkansas, Inc.*, Clark County Circuit Court, Case No. CIV-99-152.

Appellants moved to compel arbitration of the matters alleged in the complaint.[1] They argued that Appellee's claims arose from six transactions between her and Appellants conducted from September 1, 2006 to February 2, 2007, pursuant to a Deferred Presentment Option Agreement (Customer Agreement) she executed with Appellants. Appellants contended that, pursuant to the express terms of the Customer Agreement she signed, Appellee was required to submit to arbitration the claims alleged in her complaint. Appellants argued that Appellee did not challenge the arbitration provision of the Customer Agreement; rather, she asserted a challenge to the Customer Agreement as a whole and therefore *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440

---

[1] We observe that while the motion to compel arbitration was pending in state circuit court, Appellants also filed an action in federal district court to compel arbitration and stay the state-court proceedings. The Court of Appeals for the Eighth Circuit ultimately dismissed that action, determining that the amount in controversy did not satisfy the requirements for diversity jurisdiction. *Advance Am. Servicing of Ark., Inc. v. McGinnis*, 526 F.3d 1170 (2008).

(2006), required the circuit court to send the case to arbitration. Appellants attached to their motion to compel arbitration a copy of the Customer Agreement. The portions of that Customer Agreement that are at issue in this appeal are as follows:

Deferred Presentment Option Agreement

. . . .

*Default, Returned Check Fee, Court Costs, and Attorney's Fee.* You will be in default under this Customer Agreement if you do not pay us any amount you owe us under this Customer Agreement or you cause your Check not to be honored on or after the Presentment Date. If the Check is returned to us from your bank or other financial institution due to insufficient funds, closed account, or a stop-payment order, we shall have the right to all civil remedies allowed by law to collect the check and shall be entitled to recover a returned check fee of $25.00 as authorized by applicable Arkansas law, court costs, and reasonable attorney's fee paid to an attorney who is not our salaried employee. Neither we nor any other person on our behalf will institute or initiate any criminal prosecution against you.

. . . .

*Acknowledgments.* Please note that this Customer Agreement contains a binding Waiver of Jury Trial and Arbitration Provision. You acknowledge that we issued a copy of this Customer Agreement to you. You acknowledge that we paid the proceeds of the transaction to you, in cash. . . . You further acknowledge that you have read, understand, and agree to all of the terms on both sides of this Customer Agreement, including the provision on the other side of this Customer Agreement entitled "Waiver Jury Trial and Arbitration Provision."

. . . .

*WAIVER OF JURY TRIAL AND ARBITRATION PROVISION.* Arbitration is a process in which persons with a dispute: (a) waive their rights to file a lawsuit and proceed in court and to have a jury trial to resolve their disputes; and (b) agree, instead, to submit their disputes to a neutral third person (an "arbitrator") for a decision. Each party to the dispute has an opportunity to present

some evidence to the arbitrator. Pre-arbitration discovery may be limited. Arbitration proceedings are private and less formal than court trials. The arbitrator will issue a final and binding decision resolving the dispute, which may be enforced as a court judgment. A court rarely overturns an arbitrator's decision. Nothing contained in this Waiver of Jury Trial and Arbitration Provision (hereinafter the "Arbitration Provision") shall prevent or limit the authority of the Arkansas State Board of Collection Agencies from fully exercising its administrative remedies as set forth in Act 1216 of 1999 nor preclude you from any administrative remedies available to you under the Act. *THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:*

1. For purposes of this Arbitration Provision, the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Customer Agreement (including the Arbitration Provision), the information you gave us before entering into this Customer Agreement, including the Application, and/or any past agreement or agreements between you and us; (c) all counterclaims, cross-claims and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based upon a violation of any state or federal constitution, statute or regulation; (f) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (g) all claims asserted by you individually against us and/or any of our employees, agents, directors, officers, shareholders, governors, managers, members, parent company or affiliated entities (hereinafter collectively referred to as "related third parties"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on your behalf by another person; (i) all claims asserted by you as a private attorney general, as a representative and member of a class of persons, or in any other representative capacity, against us and/or related third parties (hereinafter referred to as "Representative Claims"); and/or (j) all claims from or relating directly or indirectly to the disclosure by or related third parties of any non-public personal information about you.

2. You acknowledge and agree that by entering into this arbitration Provision:

(a) *YOU ARE WAIVING YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;*

(b) *YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;* and

(c) *YOU ARE WAIVING YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.*

3. Except as provided in *Paragraph 6* below, all disputes including any Representative Claims against us and/or related third parties *shall* be resolved by binding arbitration *only* on an individual basis with you. *THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.*

. . . .

6. All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal for disputes within the scope of such tribunal's jurisdiction. Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, *shall* be resolved by binding arbitration. Any appeal of a judgment from a small claims tribunal *shall* be resolved by binding arbitration.

In her response to Appellants' motion to compel arbitration, Appellee for the first time asserted a challenge to the arbitration provision of the Customer Agreement as being unenforceable for lack of mutuality. Appellee relied on former case law from this court holding similar arbitration provisions unenforceable as lack-

ing the element of mutuality of obligation. *See, e.g.*, *Nat'l Cash, Inc. v. Loveless*, 361 Ark. 112, 205 S.W.3d 127 (2005). Appellee also claimed that the lack of mutuality rendered the Customer Agreement one-sided and therefore unconscionable. According to Appellee's response, *Buckeye* was not applicable to her case since she now included a challenge to the arbitration provision of the Customer Agreement.

The circuit court held a hearing on November 20, 2007, on the motion to compel arbitration and ruled from the bench that

> the language, reserving the right to all civil remedies, when considered with the language in the arbitration agreement section of the contract, that the arbitration agreement is invalid because the remedies lacked mutuality of the parties, not that the whole contract lacks mutuality. . . .
>
> I'm not making any ruling with regard to the validity or non-validity of the contract. I'm making my ruling only with regard to the language which I think has to be considered in conjunction with the arbitration language to determine whether or not the arbitration clause is invalid.

The circuit court then entered an order on January 16, 2008, denying the motion to compel arbitration for the reasons stated from the bench. This appeal followed.

An order denying a motion to compel arbitration is an immediately appealable order. Ark. R. App. P.–Civ. 2(a)(12). We review the circuit court's order denying Appellants' motion to compel arbitration de novo on the record. *Nat'l Cash*, 361 Ark. 112, 205 S.W.3d 127.

The first point Appellants assign as error to the trial court is the ruling that the "all civil remedies" language in the Customer Agreement renders the arbitration provision unenforceable for lack of mutuality of obligation. Implicit in the circuit court's ruling was a finding, based upon this court's case law, that the "all civil remedies" language gives Appellants access to the circuit court while limiting Appellee to arbitration. Appellants assert this was an incorrect interpretation of the arbitration provision, which provides that all disputes arising under the Customer Agreement must be resolved in either small claims court or binding arbitration. Appellants point out that the "all civil remedies" language is located separately and independently from the arbitration provi-

sion and that the circuit court erroneously grafted the language into the arbitration provision to find that it lacks mutuality. Appellants assert the circuit court erred in fundamentally equating and thereby blurring the distinction between "all civil remedies" available to a party and the "forum" in which a party may seek such remedies. Appellants maintain, for the first time on appeal, that the "all civil remedies" language is an independent-damages provision of the Customer Agreement giving Appellants the right to pursue "all civil remedies" in the event a customer's check is dishonored, but does not give them the right to pursue those remedies in judicial forums.

Appellants assert five subpoints under this first assignment of error. We address all five subpoints, but first point out that many of these subpoints raised under this first assignment of error were not raised below. At the hearing on the motion to compel arbitration, Appellants' primary argument was that *Buckeye Check Cashing*, 546 U.S. 440, required Appellee's complaint to be heard by an arbitrator. Their focus at the hearing was on the fact that Appellee could not be in court because, according to *Buckeye*, her complaint only challenged the validity of the contract as a whole and not the arbitration provision. In addition, they argued that it was only in response to the motion to compel that Appellee raised a challenge to the arbitration provision; and then the challenge was not to the arbitration provision itself but to the "all civil remedies" language, which is found elsewhere in the Customer Agreement outside the arbitration provision and therefore required the court to evaluate the contract as a whole in violation of *Buckeye*. Thus, although there was discussion at the hearing regarding the "all civil remedies" language and mutuality of the arbitration provision, as we discuss in the remainder of this opinion, much of what Appellants now argue specifically on appeal simply was not raised or ruled upon below and is therefore not preserved for appellate review.

It is elementary that this court will not consider arguments that are not preserved for appellate review. *Seidenstricker Farms v. Doss*, 374 Ark. 123, 286 S.W.3d 142 (2008). We will not do so because it is incumbent upon the parties to raise arguments initially to the trial court in order to give that court an opportunity to consider them. *Id.* Otherwise, we would be placed in the position of reversing a trial court for reasons not addressed by that court. *Id.*

We first dispose of those subpoints that are not preserved for our review. These include Appellants' arguments that (1) the fact

that "all civil remedies" is listed on the face of the Customer Agreement in the same sentence as returned check fee, court costs, and reasonable attorney's fees reflects the parties' intent that "all civil remedies" refer to "damages" and not the "forum" in which a party may pursue such damages; and that (2) because the "all civil remedies" language appears outside and independent from the arbitration provision, it would defy the plain meaning of the Customer Agreement and the rules of contract construction to read the "all civil remedies" language as invalid for lack of mutuality. As previously stated, this court does not address arguments presented for the first time on appeal.

Turning now to Appellants' subpoints that are preserved for our review, we first consider the argument that the "all civil remedies" language in the Customer Agreement merely restates the law as codified in the Check-Cashers Act and its implementing regulations and is therefore evidence that the "all civil remedies" language is intended to ensure Appellants' right to recover damages, not to give them access to judicial forums. Below, Appellee cited *Richard Harp Homes, Inc. v. Van Wyk*, 99 Ark. App. 424, 262 S.W.3d 189 (2007), which held that a reference in an arbitration clause to court costs, expenses of litigation, and attorney's fees rendered the arbitration clause ambiguous and therefore defeated mutuality. Appellants attempted to distinguish *Van Wyk* based on the fact that the language at issue in this case was a restatement of the Check-Cashers Act.

We note that the Act and regulations do use very similar language giving a check-casher the right to all civil remedies allowed by law, including receiving the face amount of the check purchased, a returned check fee, court costs, and reasonable attorney's fees. However, the mere statement of such language in the Act does not restore the lack of mutuality of obligation in this Customer Agreement caused by the "all civil remedies" language. This court has consistently and repeatedly held that the reference to "all civil remedies" available to only one party in a check-cashing agreement renders the agreement to arbitrate invalid for lack of mutuality. *See, e.g., E-Z Cash Advance v. Harris*, 347 Ark. 132, 60 S.W.3d 436 (2001). There, this court stated that "[t]aking into account their line of business, it is difficult to imagine what other causes of action against a borrower remain that [the check-casher] would be required to submit to arbitration." *Id.* at 141, 60 S.W.3d at 442. Thus, regardless of the source and the location of the "all civil remedies" language, there is no other remedy for

Appellants to seek in arbitration, and the "all civil remedies" language therefore has the effect of allowing Appellants to go to circuit court, thereby destroying the element of mutuality since Appellee does not also have that right. The location of the "all civil remedies" language in the Customer Agreement and the source of the language have no effect on the issue of mutuality or lack thereof.

■ Appellants also argue as a subpoint that mutuality of obligation does not require mutuality of remedy. They contend that under this Customer Agreement, the fact that the remedy or damages available to one party may be different than the remedy or damages available to the other party, does not defeat mutuality of obligation in the separate and independent arbitration provision. Contrary to Appellants' assertion, we do not interpret the circuit court's ruling as requiring both parties to have the same remedies. Even if the ruling below did so require, however, we can affirm it for the reason that mutuality of obligation is required and is lacking here. It is axiomatic that this court can affirm a circuit court if the right result is reached even if for a different reason. *Office of Child Support Enforcement v. Wood*, 373 Ark. 595, 285 S.W.3d 599 (2008).

■ Appellants' second assignment of error is the circuit court's holding that a term outside and independent of the arbitration provision rendered the arbitration provision unenforceable. Appellants contend the circuit court erred in looking to provisions of the contract outside the arbitration provision to evaluate the validity of the arbitration provision. The circuit court ruled that the "all civil remedies" language in the Customer Agreement destroyed the arbitration provision's mutuality. Appellants contend that since the "all civil remedies" language was not part of the arbitration provision itself, the circuit court erroneously evaluated the contract as a whole and thereby contravened *Buckeye Check Cashing*, 546 U.S. 440.

*Buckeye* does not stand for the proposition argued by Appellants. *Buckeye* holds that it is improper for a court to consider a claim that a contract containing an arbitration clause is invalid as a whole when there is not also a claim that the arbitration clause is itself invalid. *Buckeye* does not, however, also hold that when considering the validity of an arbitration clause, a court is constrained to the clause itself and prohibited from considering other

parts of the contract relating to the agreement to arbitrate disputes arising from the contract. Appellants' argument extends the holding of the *Buckeye* case too far.

*Buckeye* involved a putative class action filed in Florida state court alleging the deferred deposit contract signed by Buckeye Check Cashing and its customers violated Florida's laws prohibiting usury and deceptive trade practices. Buckeye Check Cashing moved to compel arbitration of that case. The United States Supreme Court granted certiorari to decide "whether a court or an arbitrator should consider the claim that a contract containing an arbitration provision is void for illegality." *Buckeye Check Cashing,* 546 U.S. at 442. The Supreme Court observed that "[t]he crux of the complaint is that the contract as a whole (including its arbitration provision) is rendered invalid by the usurious finance charge" and went on to conclude that "because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court." *Id.* at 444, 446. The Supreme Court ultimately held that, "regardless of whether the challenge is brought in federal or state court, a challenge to the validity of a contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Id.* at 449.

Like *Buckeye,* the complaint in the present case does not assert a challenge to the arbitration provision itself, but rather asserts a challenge to the whole contract as being usurious and a deceptive trade practice. However, unlike *Buckeye* where there was no challenge to the arbitration provision itself, Appellee in the present case asserted a claim that the arbitration provision was invalid for lack of mutuality of obligation in her response to the motion to compel arbitration.

The circuit court below clearly stated from the bench that it was not making a ruling on the merits of the validity of the contract as a whole, but was ruling that the "all civil remedies" language appearing on the first page of the Customer Agreement rendered the arbitration provision found in the remainder of the Customer Agreement invalid for lack of mutuality. As we quoted previously in this opinion, the circuit court clearly stated: "I'm not making any ruling with regard to the validity or non-validity of the contract. I'm making my ruling only with regard to the language which I think has to be considered in conjunction with the arbitration language to determine whether or not the arbitration

clause is invalid." This ruling does not amount to an evaluation of the validity of the contract as a whole and therefore does not run afoul of *Buckeye*.

Appellants' third assignment of error is that the circuit failed to strike the allegedly offensive "all civil remedies" clause and enforce the remainder of the arbitration provision. Appellants contend that rather than invalidating the arbitration provision, the circuit court should have, at most, invalidated and severed only the "all civil remedies" language, while giving effect to the intent of the parties to arbitrate claims covered by the arbitration provision. Appellants concede that the arbitration provision does not contain a severance provision. They argue, however, that the essence of the Customer Agreement is that the parties arbitrate any disputes arising from or related to the Customer Agreement and severing the "all civil remedies" language does not change the essence of that intent to arbitrate.

■ Neither the addendum nor the abstract reveals that Appellants ever asked the circuit court to strike the "all civil remedies" language and give effect to the remainder of the Customer Agreement. Appellants' motion to compel arbitration does not raise the issue. The abstract of the hearing does not indicate this issue was ever presented to or ruled upon by the circuit court. Because Appellants did not raise below the argument that the circuit court should have struck the "all civil remedies" language from the Customer Agreement that it now makes on appeal, we do not consider that argument. *Seidenstricker*, 374 Ark. 123, 286 S.W.3d 142.

Appellee includes an assertion in her brief that this court could affirm the trial court for a reason different from what it ruled — that the arbitration provision was unconscionable. There is no need to address this assertion since we affirm on the lack of mutuality. *See, e.g., The Money Place v. Barnes*, 349 Ark. 411, 78 S.W.3d 714 (2002) (stating that because the arbitration provision was held unenforceable for lack of mutuality, there was no need to discuss whether the arbitration provision was unconscionable).

■ We conclude that, consistent with *Buckeye*, it was permissible for the trial court to rule on the validity of the arbitration provision because Appellee challenged the arbitration provision on an independent basis from her challenge to the contract as a whole. Appellee's challenge to the contract was that it was a usurious loan, a deceptive trade practice, and a violation of

a court-approved settlement agreement. Her challenge to the arbitration provision was that it was unenforceable as lacking mutuality of obligation. The trial court followed the numerous cases from this court invalidating similar arbitration provisions and contract language as lacking mutuality of obligation and therefore correctly denied Appellants' motion to compel arbitration. The order denying the motion to compel arbitration is affirmed.