# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-15-778

| | |
|---|---|
| JOSEPH LONGLEY AND ANNETTE LONGLEY (DECEASED) | **Opinion Delivered:** February 1, 2017 |
| APPELLANTS | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. 66CV-2013-1007] |
| V. | |
| CURTIS GATEWOOD AND CHRISTINE GATEWOOD, HUSBAND AND WIFE | HONORABLE STEPHEN TABOR, JUDGE |
| APPELLEES | AFFIRMED |

## RITA W. GRUBER, Chief Judge

This case has returned to us after rebriefing.[1] Appellant Joseph Longley appeals from an order of the Sebastian County Circuit Court setting aside a deed and quieting title to certain property in his sister, appellee Christine Gatewood, subject to the marital interest of her husband, appellee Curtis Gatewood. On appeal, Joseph contends that the circuit court erred, first, in allowing his counsel to withdraw on the morning of trial in violation of Rule 64(b) of the Arkansas Rules of Civil Procedure and, second, in not properly considering his defense of laches. We affirm the circuit court's order.

Clarence Wilson, the uncle of Christine and Joseph, purchased the disputed property at 600 North 20th Street in Fort Smith on May 3, 1996. The deed transferring the property lists the grantees as Clarence, Frances M. Longley (Clarence's sister and Christine and

---

[1]*Longley v. Gatewood*, 2016 Ark. App. 365.

Joseph's mother), and Christine as joint tenants with the right of survivorship. On December 18, 2000, a warranty deed purporting to transfer the property to Joseph and Annette Longley[2]—and appearing to contain the notarized signatures of Clarence, Frances, and Christine—was filed of record in Sebastian County. Joseph, Annette, and their children began residing at the property on December 18, 2000, and Joseph has been in continuous possession of the property since that time.

On February 7, 2003, Frances passed away, and on March 20, 2013, Clarence passed away. Seven months after Clarence's death, on October 17, 2013, Christine and Curtis filed a petition against the Longleys to set aside/cancel the 2000 deed, alleging that Christine's signature had been forged, that she had not discovered the deed until after Clarence's death, and that she should be the sole record owner of the property because Frances and Clarence had both passed away, leaving her the owner as the sole survivor of the three.

Joseph retained James Filyaw to represent them. Joseph denied the allegations in the complaint and pleaded the defenses of laches, statute of limitations, and waiver. The trial was continued several times at Filyaw's request due to Joseph's unavailability and, in January 2015, Filyaw filed a petition to withdraw due to Joseph's continued lack of cooperation and communication. Filyaw withdrew the motion less than a week after having filed it, indicating that the communication problems had been resolved. However, on March 24, 2015, Filyaw filed a second petition to withdraw, again alleging difficulty communicating with Joseph. He

---

[2]Annette suffered a stroke in May 2014 and passed away on October 17, 2014, before the trial.

mailed a copy to Joseph. On April 2, 2015, Filyaw filed a letter addressed to the court, copying the Gatewoods' counsel and Joseph, alerting the court to his motion to withdraw and asking for a hearing on the motion. He stated that he had lost contact with his client; that he had been unable for six weeks to schedule a meeting, talk on the phone, or otherwise communicate with him despite repeated efforts; and that it had become impossible for him to continue as an effective attorney for him. The circuit court neither granted nor denied Filyaw's motion, but did send a letter to Filyaw on April 7, 2015, copying the Gatewoods' counsel; recognizing receipt of the motion and letter; and stating that it could not grant the request "at this time" because the trial had been delayed numerous times already, and the court would "have to afford" Joseph additional time to retain counsel, only further delaying the matter. The court did not send a copy of this letter to Joseph.

A trial was eventually held on April 16, 2015. Before hearing any testimony, the circuit court addressed Filyaw's petition to withdraw. The court first heard argument from Filyaw and then allowed Joseph to address the court. Joseph stated that he had been out of work for a year, that he and Filyaw had continued to argue about money when they talked, and that he had realized that he could not afford Filyaw's legal services. The circuit court then questioned Joseph, "So you don't want Mr. Filyaw to be your lawyer?" Joseph responded, "Well, evidently not, because we can't agree. I mean, there was never a set price as to what it would cost in this matter." The court then made the following findings and observations and granted Filyaw's motion to withdraw:

> THE COURT: Let me tell you my problem, Mr. Longley. This is the fourth time that this matter has been set for trial. It's been pending since October of 2013. The three

previous trial settings were continued at your request. Throughout the trial there have been issues regarding discovery that Mr. Filyaw could not respond to because he said you wouldn't cooperate with him in that.

I think Mr. Filyaw . . . has made it clear that you have not completed your obligations to him, as far as meeting with him and providing information to present a defense on your behalf. Therefore, I am . . . going to allow Mr. Filyaw to withdraw as your attorney, but we are going to proceed [with] this matter to trial today. And so you will be representing yourself, if it remains your desire to contest this petition, which I assume it does. All right?

The court then explained the trial process, and the trial proceeded with Joseph representing himself. Joseph never objected to the circuit court's decision granting Filyaw's motion to withdraw or to its decision to proceed with the trial.

The Gatewoods' first witness was Joseph Lucas, a forensic document examiner, who was retained by them to examine the 2000 deed to determine whether the signature purporting to be Christine's was valid. He testified that after reviewing documentation containing Christine's signature and reviewing ten signatures and certificates from the same time period as the deed and comparing them with the signature on the deed, he determined that the signature on the deed was a forgery. He testified that the signature on the 2000 deed was not Christine's genuine signature, that there was no correlation "whatsoever" between Christine's known writings and the deed, and that he had no reservations about his opinion.

Christine testified that the signature on the 2000 deed purporting to be hers was not her signature. She testified that, when the deed was signed, she and Curtis had lived in Little Rock where she was a teacher. She said that she was not in Fort Smith on the day the deed was allegedly signed but had been at work that day planning the school Christmas party. She produced the deed transferring the disputed property to Clarence, Frances, and her as joint

4

tenants with the right of survivorship dated May 3, 1996. She said that she had discovered the 2000 deed containing her forged signature when she went to the courthouse to inquire about the property in the summer of 2013 after Clarence's death. She said that she attempted to speak with Joseph about the deed to resolve the matter but that he did not respond. It was after attempting to reach her brother and then obtaining an attorney to attempt to reach him, both unsuccessfully, that she filed this lawsuit seeking cancellation of the deed and quiet title to the property.

Dale Arnold, the title insurance agent who notarized all three signatures on the 2000 deed, testified that he rarely notarized the execution of deeds; that deeds "were constantly flowing through the title company"; and that "sometimes" a signature on a document would be notarized when the signor was not present. He also said it was possible that someone identified herself as Christine who might not have been Christine.

Joseph presented the testimony of both of his adult daughters. Sarah Tinsley testified that Clarence was an honest and very noble person and was Joseph's "best friend." She said that Clarence trusted Joseph and put everything of his in Joseph's name. She also testified that her mother had improved the disputed property by putting in new carpet and installing a new roof. Alicia Smith testified that Clarence was very close to their family and that he "absolutely" trusted Joseph. Both Sarah and Alicia testified that they had never seen their aunt, Christine, at the disputed property. Finally, Joseph testified on his own behalf, stating that Clarence had wanted to help him and that Clarence trusted Joseph with everything he had.

The court allowed the parties to submit posttrial briefs and explained to Joseph that "anything that you want to argue in there, you are welcome to put in there, okay, whether it relates to his pleading or not. And if you put new stuff in there, then I will give Mr. Gean a few days to respond to that." Both parties submitted posttrial briefs. The court entered an order on June 8, 2015, and an amended order on June 15, 2015, stating that "the evidence could have hardly been more clear that the signature on the document purporting to be that of Christine Gatewood conveying the property to Defendants was fraudulent." The court also found that the defense of laches was not established by the evidence. The court granted the Gatewoods' motion to set aside/cancel the deed and quieted title to the disputed property in Christine subject to Curtis's marital interest.

## I. *Attorney Withdrawal*

For his first point on appeal, Joseph argues that the circuit court's decision to allow Filyaw to withdraw caused Joseph prejudice in violation of Rule 64(b) of the Arkansas Rules of Civil Procedure. This argument is not preserved for our review because Joseph did not raise this argument to the circuit court, and the circuit court did not rule on it. We will not consider arguments that are not preserved for appellate review. *Seidenstricker Farms v. Doss*, 374 Ark. 123, 126, 286 S.W.3d 142, 144 (2008). We will not do so because it is incumbent upon the parties to raise arguments initially to the circuit court in order to give that court an opportunity to consider them. *Advance Am. Servicing of Ark., Inc. v. McGinnis*, 375 Ark. 24, 33, 289 S.W.3d 37, 43 (2008). Otherwise, we would be placed in the position of reversing a circuit court for reasons not addressed by that court. *Id.*

Here, Filyaw filed the motion to withdraw on March 24, 2015, and mailed a copy of the motion to Joseph. On April 2, 2015, Filyaw filed a letter with the court asking for a hearing, again copying Joseph. Joseph attended the trial on April 16, 2015, at which the circuit court entertained argument on Filyaw's motion. Joseph was given the opportunity to speak, and he did. As an explanation for his failure to communicate with counsel, he said that they differed regarding the cost of the representation. As previously noted in our opinion, under questioning by the court regarding whether Joseph wanted Filyaw to continue his representation, Joseph replied, "Well, evidently not, because we can't agree. I mean, there was never a set price as to what it would cost in this matter." At that point, the court granted Filyaw's motion. Joseph did not object. The trial proceeded with Joseph representing himself. At the conclusion of the trial, the court told the Gatewoods' counsel and Joseph that it would accept posttrial briefs on the issues. Indeed, the court told Joseph that he was free to put "anything that you want to argue in there." The court even advised Joseph that he could obtain counsel to help with the brief if he desired. Joseph filed a posttrial brief. The brief did not mention Filyaw's withdrawal. Joseph's argument is not preserved for our review.

## II. *Laches*

For his second point on appeal, Joseph contends that the circuit court's failure to properly consider the defense of laches, other than to dismiss the argument for lack of evidence, is clearly erroneous. The court's order simply states that "[t]he defense of laches was not established by the evidence." The standard of review on appeal from a bench trial

7

is whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Washington v. Washington*, 2013 Ark. App. 54, at 3, 425 S.W.3d 858, 861. Disputed facts and determinations of credibility are within the province of the fact-finder. *Id.*

Laches is an equitable doctrine premised on some detrimental change in position made by one party in reliance upon the action or inaction of the other party. *Anadarko Petroleum v. Venable*, 312 Ark. 330, 342, 850 S.W.2d 302, 308 (1993). The first requirement in laches is that the party have knowledge of his or her rights and the opportunity to assert those rights. *Carwell Elevator Co. v. Leathers*, 352 Ark. 381, 391, 101 S.W.3d 211, 218–19 (2003). The doctrine operates to bar an action by a party who has "sat on his rights," i.e., purposely or negligently failed to assert a claim for so long that to permit it now would disadvantage prejudicially an opposing party. *Massongill v. Cty. of Scott*, 337 Ark. 281, 287, 991 S.W.2d 105, 109 (1999). The application of laches is based on the particular circumstances of each case and is a question of fact for the circuit court. *Adams v. Howard*, 2014 Ark. App. 328, at 6, 436 S.W.3d 473, 477.

Joseph argues that the evidence at trial established the following. Joseph and his family were in need of a larger home. In response to this need, Clarence deeded the disputed property to Joseph and Annette. He and his family had lived there since 2000, making improvements and paying the taxes. Christine knew that Joseph and his family lived at the disputed property. Christine took no legal action to assert her interest in the property until after the death of the joint tenants to the original deed. Joseph contends that he was

disadvantaged because he lived in the home for fifteen years, improved it, and no evidence proved that he had committed or commissioned the fraud or forgery. Thus, he argues, Christine should be barred by laches from uprooting Joseph from his home.

We note first that laches is an equitable principle. We also recognize that the first requirement of laches is that the party, here Christine, must have knowledge of her rights and an opportunity to assert those rights. *Carwell Elevator Co.*, 352 Ark. at 391, 101 S.W.3d at 219. Until the death of Clarence, Christine did not have sole ownership of the property. She shared ownership with Clarence, who had funded the purchase of the property. The court also found, and Joseph does not challenge the finding, that Christine's signature on the deed conveying the property to Joseph was a forgery. Christine testified that she had no knowledge of the forged deed and asserted her rights shortly after discovering it several months after her uncle's death. She filed this lawsuit several months after discovering the deed, having unsuccessfully attempted to resolve the matter first with Joseph. As we previously stated, laches is an equitable doctrine, and determinations of credibility lie within the province of the circuit court. We hold that the circuit court's finding that laches was not established by the evidence in this case is not clearly erroneous.

Affirmed.

GLADWIN and BROWN, JJ., agree.

*Smith, Cohen & Horan, PLC*, by: *Stephen C. Smith*, for appellant.

*Gean, Gean Gean, Attorneys at Law*, by: *Roy Gean III*, for appellees.