Cite as 2026 Ark. App. 286

# ARKANSAS COURT OF APPEALS

DIVISIONS III & IV
No. CV-25-108

|  |  |  |
|---|---|---|
|  |  | Opinion Delivered May 6, 2026 |
| ARKANSAS KENWORTH, LLC |  |  |
|  | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION |
| V. |  | [NO. 60CV-24-3227] |
|  |  |  |
| JIMMIE LEE GASTON; AND GASTON TRUCKING, INC. |  | HONORABLE TIMOTHY DAVIS FOX, JUDGE |
|  | APPELLEES | AFFIRMED |

**KENNETH S. HIXSON, Judge**

This is an interlocutory appeal from a Pulaski County order denying appellant Arkansas Kenworth, LLC's, motion to dismiss and to compel arbitration against appellees Jimmie Gaston and Gaston Trucking, Inc. (collectively, "Gaston"). On appeal, Kenworth argues that the circuit court erred in refusing to enforce a valid arbitration agreement and by directing that a jury trial be held to determine its enforceability. For the following reasons, we affirm the circuit court's order denying Kenworth's motion to compel.

## I. *Relevant Facts*

This dispute arises from a contract between Kenworth and Gaston to repair a truck owned by Gaston. Kenworth is a full-service trucking dealership authorized to service trucks with PACCAR engines. Gaston operates a trucking business, Gaston Trucking, Inc. In 2015, Gaston purchased the truck from Kenworth. In April 2023, Gaston began

experiencing problems with his truck and took it to Kenworth for repairs and paid Kenworth $7,598.03. A few months later, Gaston continued to have issues with the truck and took it back for repairs on August 30, 2023. Gaston was given multiple estimates for the repairs and made a $29,000 down payment. After Kenworth completed the repairs, Gaston was presented with a final invoice in the amount of $65,245.88, which was later negotiated down to $62,320. Gaston refused to pay, contending that the repairs were done in a negligent manner. As a result, Kenworth retained possession of the truck and asserted a statutory lien.

On April 22, 2024, Gaston filed a complaint alleging breach of contract and tort of conversion, which included a demand for a jury trial. Kenworth responded with a motion to dismiss and compel arbitration. In support of this motion, Kenworth attached a signed copy of repair order work authorization #256659 ("RO #256659") that Kenworth claimed was signed by Gaston as the customer. Directly above Gaston's signature, the order expressly provides that **"THIS ORDER CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES."** (Emphasis in original.) The second page contains more detailed terms and conditions, including a provision that any controversy or claim arising out of or relating to the order shall be decided by arbitration in accordance with the "United States Arbitration Act (Title 9 of the United State[s] Code)."

Gaston filed a response to the motion to compel arbitration arguing in part that he did not consent to arbitrate any dispute with Kenworth because he did not sign an arbitration clause, and he did not receive notice of an arbitration clause. Gaston attached his affidavit to his response. In the affidavit, Gaston averred that "[I]n looking at the

2

signature, I can tell that is not my signature, and I did not sign that particular repair order (RO #256659), which is attached to the defendant's motion to compel arbitration as Exhibit 1." However, Gaston admitted he had "agreed to have the work done for Repair Order # 256659," and he admitted elsewhere that he had made payments of $14,000 and $15,000 toward RO #256659.

In response, Steven B. Cassidy, Kenworth's employee, submitted an affidavit on behalf of Kenworth stating, "I took Jimmy Lee Gatson's signature on repair work authorization number 256659 via electronic signature pad. The repair work authorization was signed by Jimmy Lee Gatson[1] on or about September 3, 2023."

A hearing was held on October 21, 2024. At the hearing, the parties argued over whether Gaston had a right to a jury trial on the disputed fact that he did not sign the arbitration agreement. The following colloquy ensued:

| [GASTON'S COUNSEL]: | But it is our position, Your Honor, that he did not sign this particular repair order. |
| THE COURT: | Okay. So that's where we need to get to. |
| [KENWORTH'S COUNSEL]: | Yes, your honor. |
| [GASTON'S COUNSEL]: | Right. |
| . . . . | |
| THE COURT: | And then I have an affidavit from your client that says that specific one, that is not his signature, which means it's a forgery. |

---

[1]This appears to be a typographical error. At times in the record, Gaston's name is misspelled "Gatson," and his company is misspelled as "Gatson Trucking, Inc."

3

| | |
|---|---|
| [GASTON'S COUNSEL]: | Correct. |

. . . .

| | |
|---|---|
| THE COURT: | . . . So did you-all request a jury trial? |
| [GASTON'S COUNSEL]: | Yes, Your Honor.  As I recall, the plaintiff did request a jury trial in the complaint. |
| THE COURT: | [Kenworth's counsel], is it to the Court -- if there's a jury trial requested, is it to the Court to make the decision whether that's a legit signature or a forgery?  I mean, I understand that you gave me some other examples – |
| [KENWORTH'S COUNSEL]: | Right.  Understood, Your Honor. |
| THE COURT: | -- but I'm asking you if it's to the Court. |
| [KENWORTH'S COUNSEL]: | Your Honor, it's our position that it is to the Court to determine if a valid arbitration agreement between the parties exists. |
| THE COURT: | Well, I'm agreeing with you on that, if that's his signature. |
| [KENWORTH'S COUNSEL]: | Correct, Your Honor. |
| THE COURT: | Okay.  So that's a factual issue. |

. . . .

| | |
|---|---|
| THE COURT: | Sure.  So is that a factual issue for a jury to decide first, or for the Court to decide? |
| [KENWORTH'S COUNSEL]: | We are of the position that that would be for the Court to decide because it speaks to as to whether or not there's a valid arbitration agreement between the parties. |

4

THE COURT:                                    Oh, I see.  Well, that's a very clever argument.

After hearing arguments from counsel, the circuit court found that the arbitration agreement included in RO #256659 was valid but that a factual dispute existed as to whether Gaston had signed the repair order and arbitration agreement.  Further, it found that the factual dispute should be decided by a jury because Gaston had made a jury demand in his complaint.  On October 30, 2024, the circuit court entered a written order denying Kenworth's motion, and on November 26, 2024, Kenworth filed a timely interlocutory appeal from the circuit court's order.  Ark. R. App. P.–Civ. 2(a).

## II.  *Standard of Review*

An order denying a motion to compel arbitration is immediately appealable pursuant to Arkansas Rule of Appellate Procedure–Civil 2(a)(12) (2025).  We review a circuit court's denial of a motion to compel arbitration de novo on the record.  *Robinson Nursing & Rehab. Ctr., LLC v. Phillips*, 2019 Ark. 305, 586 S.W.3d 624.  While we are not bound by the circuit court's decision, in the absence of a showing that the circuit court erred in its interpretation of the law, we will accept its decision as correct on appeal.  *Progressive Eldercare Servs.-Morrilton, Inc. v. Taylor*, 2021 Ark. App. 379.

The Federal Arbitration Act (FAA) governs the agreement at issue.  The FAA establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution.  *Reg'l Care of Jacksonville, LLC v. Henry*, 2014 Ark. 361, 444 S.W.3d 356.  Likewise, in Arkansas, arbitration is strongly favored as a matter of public policy and is looked upon with approval as a less expensive and more expeditious means of settling

5

litigation and relieving docket congestion. *Id.* Despite an arbitration provision being subject to the FAA, we look to state contract law to decide whether the parties' agreement to arbitrate is valid. *Phillips*, *supra*. The same rules of construction and interpretation apply to arbitration agreements as apply to agreements in general. *Id.* The essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligation. *Alltel Corp. v. Sumner*, 360 Ark. 573, 203 S.W.3d 77 (2005). When a court is asked to compel arbitration, it is limited to deciding two threshold questions: (1) whether there is a valid agreement to arbitrate between the parties and, (2) if such an agreement exists, whether the dispute falls within its scope. *Asset Acceptance, LLC v. Newby*, 2014 Ark. 280, 437 S.W.3d 119.

Even if a court finds that an arbitration agreement exists and that the dispute falls within the scope of the arbitration agreement, the court may still declare an arbitration agreement unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." *Bank of the Ozarks, Inc. v. Walker*, 2014 Ark. 223, at 5, 434 S.W.3d 357, 360 (quoting Federal Arbitration Act, 9 U.S.C. § 2). Thus, contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements. *Id.*

III. *Analysis*

On appeal, Kenworth contends that while the circuit court correctly found the arbitration clause itself valid and enforceable as written, it erroneously referred the issue of contract formation—specifically, Gaston's consent—to a jury, despite having a full evidentiary

6

record before it. Alternatively, Kenworth asks this court to find that a valid arbitration agreement existed and that the parties' dispute must be resolved in arbitration.

The right to a jury trial on the issue of the creation of an arbitration agreement is governed by the FAA, specifically 9 U.S.C. § 4. Section 4 of the FAA states as follows:

> A party aggrieved [Kenworth] by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default [Gaston]. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default . . . the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default [Gaston] may . . . demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury.

For purposes of determining who may demand a trial by jury, the statute identifies two parties: a "party aggrieved [Kenworth]" and a "party in default [Gaston]." Under section 4, a "party aggrieved [Kenworth]" by the refusal of another party to arbitrate may petition the court for an order directing that the "party in default [Gaston]" be compelled to arbitrate. Thus, the "party aggrieved [Kenworth]" is the party seeking to compel arbitration. But it is clear that the statute gives only a "party in default [Gaston]," i.e., the party resisting arbitration, the right to demand a jury trial. *Id.*

Accordingly, Kenworth, as the party seeking to compel arbitration, is the "party aggrieved" under the FAA. Gaston is the party resisting arbitration and is, thus, the "party in default" under the statute. Therefore, only Gaston could request a jury trial.

7

The operative language in section 4 is: "If no jury trial be demanded by the party alleged to be in default [Gaston] . . . the court shall hear and determine such issue. *Where such an issue is raised, the party alleged to be in default* [Gaston] *may . . . demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury.*" (Emphasis added.)

Here, the record indicates that Gaston "raised" the issue that he was entitled to a jury trial. Gaston's counsel raised the issue by demanding a jury trial in its complaint and at the hearing on the motion to compel arbitration. According to the transcript of the hearing in the record, the only issue argued and decided at the hearing was whether Gaston had a right to a jury trial on the disputed fact that he did not sign the arbitration agreement. The hearing was fully argued on both sides, and the circuit court asked several pertinent questions. The court specifically stated: "We have as a fundamental tenet in the State of Arkansas a right to a jury trial." Article 2, section 7 of the Arkansas Constitution provides the following in pertinent part: "The right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy." After considering the argument of counsel, section 4 of the FAA, and Arkansas's fundamental right to a jury trial, the circuit court determined that Gaston had a right to a jury trial on the issue.

While we are not bound by the circuit court's decision, in the absence of a showing that the circuit court erred in its interpretation of the law, we will accept its decision as correct on appeal. *Taylor*, 2021 Ark. App. 379. Thus, in accordance with the FAA and the Arkansas Constitution, the circuit court properly denied Kenworth's motion to compel

arbitration and referred the matter to a jury. Accordingly, we affirm the circuit court's order denying Kenworth's motion to compel arbitration and dismiss.

Kenworth's remaining argument is that we should find that a valid arbitration agreement exists and order that the parties' dispute be resolved in arbitration on the basis of the current record. Because we affirm the circuit court's finding that the validity of Gaston's signature is a question of fact to be decided by a jury, we do not address whether a valid arbitration agreement exists on the record before us.

We note that the dissent would reverse and remand because section 4 of the FAA required Gaston to demand a jury trial within its response to Kenworth's motion to compel arbitration. However, contrary to the dissent's assertion otherwise, Kenworth did *not* raise this defense or argument below or even on appeal. The supreme court has said that "*de novo* review does not mean that this court can entertain new issues on appeal when the opportunity presented itself for them to be raised below, and that opportunity was not seized." *Edward D. Jones & Co., LLC v. Lewis*, 2020 Ark. App. 327, at 2 (quoting *Lamontagne v. Ark. Dep't of Hum. Servs.*, 2010 Ark. 190, at 6, 366 S.W.3d 351, 354); *see also Country Gentleman, Inc. v. Harkey*, 263 Ark. 580, 569 S.W.2d 649 (1978). It is incumbent upon the parties to raise arguments initially to the circuit court in order to give that court an opportunity to consider them. *Advance Am. Servicing of Ark., Inc. v. McGinnis*, 375 Ark. 24, 289 S.W.3d 37 (2008). Otherwise, we would be placed in the position of reversing a circuit court for reasons not addressed by that court. *Id.* Moreover, even if an argument was raised

9

to the circuit court, the supreme court has made it clear that issues not argued by the appellant on appeal are waived. *See Country Gentleman, Inc., supra.*

The dissent maintains that Kenworth argued on appeal that this court should reverse on the basis of section 4's requirement that Gaston demand a jury trial in its response because it included the following sentence in its brief in support of its motion to compel: "The Federal Arbitration Act ('FAA')—which governs the arbitration agreement at issue in this case—requires the application of 'federal substantive law regarding arbitration.' [*Courtyard Gardens Health & Rehab., LLC v. Arnold*, 2016 Ark. 62, at 5, 485 S.W.3d, 485 S.W.3d 669, 673.]" We cannot conclude that this sentence preserves the argument the dissent suggests. In that sentence, Kenworth does not specifically discuss section 4 of the FAA, the right to a jury trial, or Gaston's failure to demand a jury trial in its response. Because Kenworth failed to argue the dissent's basis for reversal in its brief on appeal, it is waived, and we must affirm. *See Country Gentleman, Inc., supra*; *Edward D. Jones & Co., LLC, supra*.

The dissent further maintains that Kenworth preserved the argument to the circuit court at the hearing because Kenworth's counsel stated the following: "We are of the position that that would be for the Court to decide because it speaks to as to whether or not there's a valid arbitration agreement between the parties." Again, we cannot agree. Counsel did not even mention the FAA much less argue that section 4 required Gaston's demand for a jury trial be made in a response motion. Accordingly, because Kenworth did not raise the issue of whether the demand for a jury trial must be contained in the appellee's response to

10

the motion to enforce arbitration both before the circuit court and in its brief on appeal, we cannot reverse on this basis.

Thus, we affirm the circuit court's decision and remand for proceedings consistent with this opinion.

Affirmed.

KLAPPENBACH, C.J., and BARRETT and BROWN, JJ., agree.

ABRAMSON and MURPHY, JJ., dissent.

**MIKE MURPHY, Judge, dissenting**. The majority holds that appellant Kenworth failed to argue to the trial court that Gaston should have requested a jury trial in his response to the motion to compel arbitration. The majority reasons that to analyze that issue would be advisory in nature and that the appellate court would be, in effect, making an argument for appellant that was not properly raised below. Because I believe that the issue of whether the trial court or a jury should determine whether Gaston signed the document creating a valid arbitration agreement was properly before the trial court, I dissent.

As the majority opinion states, the operative language in Section 4 of the Federal Arbitration Act (FAA) is: "If no jury trial be demanded by the party alleged to be in default [Gaston] . . . the court shall hear and determine such issue. *Where such an issue is raised, the party alleged to be in default* [Gaston] *may . . . demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury*." (Emphasis added.)

The majority holds that Gaston's counsel "raised" the issue by demanding a jury trial in its complaint and at the hearing on the motion to compel arbitration. However, we have

specifically held that it is not enough for the party in default to request a jury trial on the issues raised in the party's complaint when there has been no such demand for a jury trial in response to the motion to compel arbitration. *See Pines - Progressive Eldercare Servs., Inc. v. Brock*, 2025 Ark. App. 63, at 7–8, 706 S.W.3d 1, 4–5; *see also Boone Operations, LLC v. Adams*, 2025 Ark. App. 34, 705 S.W.3d 503. Here, Gaston never requested a jury trial in response to the motion to compel arbitration, and because he did not do so, the dispute became a question for the court.

Additionally, I disagree with the majority's characterization of the hearing and do not think we can conclude that Gaston sufficiently requested a jury trial based on the hearing itself. The discussion of a jury trial was minimal; rather, the hearing focused primarily on the underlying facts surrounding the signature dispute. Moreover, it was the court—not Gaston—who raised the issue of a jury trial. When asked, Gaston clarified only that a jury trial had been demanded in the complaint. Thus, I believe the proper disposition is to reverse and remand for the trial court to find whether Gaston's signature is valid.

As to the whether we are raising this issue sua sponte, the majority holds that despite the trial court finding that—subject to the disposition of the signature issue—there was a valid and binding arbitration agreement, we are creating arguments not raised below. I disagree.

In its original complaint, Gaston requested that "this matter be tried before twelve fair and impartial jurors from this county." Further, in its brief supporting its motion to dismiss and compel arbitration, Kenworth specifically argued to the trial court: "The Federal Arbitration Act ('FAA')—which governs the arbitration agreement at issue in this case—

12

requires the application of 'federal substantive law regarding arbitration.' [*Courtyard Gardens Health & Rehab., LLC v. Arnold*, 2016 Ark. 62, at 5, 485 S.W.3d, 485 S.W.3d 669, 673]."

This "substantive law" includes the principle that any right to a jury trial on the issue of the creation of an arbitration agreement is governed by the FAA—specifically, 9 U.S.C. § 4.

Moreover, this issue was argued to the trial court at the hearing on the motion to dismiss:

| [KENWORTH'S COUNSEL]: | But the practice would indicate that the defendant always requires the customer to sign the work order prior to commencing work. |
|---|---|
| THE COURT: | Sure. So is that a factual issue for a jury to decide first, or for the Court to decide? |
| [KENWORTH'S COUNSEL]: | We are of the position that that would be for the Court to decide because it speaks to as to whether or not there's a valid arbitration agreement between the parties. |
| THE COURT: | Oh, I see. Well, that's a very clever argument. |

The trial court then made its ruling from the bench:

| THE COURT: | Okay. Well, I'm going to deny your motion, but when you prepare the order – I'm denying – I'm finding that the arbitration agreement on the work order is valid and binding language-wise, but there is a factual dispute as to whether the plaintiff signed that work order, and that I think it's for the jury, as the tryer of fact, to first make that decision by an interrogatory, and then everything else is downstream of that. Okay? |

Kenworth specifically argued to the trial court that the issue of determining the validity of Gaston's signature was for the trial court and not a jury pursuant to the law

13

governing the FAA; the trial court then made its ruling but erred in its interpretation of the law. For these reasons, I would reverse and remand.

Respectfully, I dissent.

ABRAMSON, J., joins.

*Mitchell, Williams, Selig, Gates & Woodyard, PLLC*, by: *John P. Talbot* and *Sarah Gold*, for appellant.

*Terrence Cain*, for appellees.